FRANK ELLIS v. THE TERRITORY OF OKLAHOMA.

(Filed March 4, 1904.)

1. NEW TRIAL—Error to Refuse, When. It is error to deny a new trial in a murder case after a showing that a juror stated before the trial, that there seemed to be a very strong case against the defendant, and if one half of what Hellers, the stone-mason, said at the restaurant was true, he, the defendant, ought to be hung, and he believed the stone-mason knew what he was talking about, and appeared, to be a truthful man, and well acquainted with the

case; and where the juror further stated, that insanity, which was the defense in the case on trial, was an old dodge resorted to when a fellow gets into a close place, and where it appears that the juror on being fully examined on his voir dire had stated under oath that he was not biased or prejudiced; and it further appearing that the statements made by the juror were not known to counsel until after verdict.

.2 EVIDENCE—Examined, When. While it is a general rule that this court will not disturb a finding of fact by the district court where the evidence reasonably tends to support such finding; yet, this court has a right to examine the testimony introduced in that court to determine whether such evidence does reasonably tend to support the finding of that court.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before B. F. Burwell, Trial Judge.*

*Joseph Wisby* and *Lawrence & Houston,* for plaintiff in error.

*J. C. Robberts, Attorney General,* and *F. H. McGuire, County Attorney,* for defendant in error.

### STATEMENT OF FACTS.

In this case the plaintiff in error, Frank Ellis, was indicted by the grand jury of Logan county for the crime of murder. To this indictment a plea of not guilty was entered. The defendant relied upon insanity at the time of the commission of the act, and on the trial of the case in the district court a verdict of guilty was rendered, and the defendant was sentenced to the penitentiary for the term of his natural life. A motion for a new trial was filed on the following grounds:

"First: That the verdict of the jury was contrary to law.

"Second: That the verdict is contrary to the evidence.

"Third:    That the verdict is contrary. to the weight of the evidence.

"Fourth:    That the court misdirected the jury in matters of law in his instructions.

"Fifth:    That the court erred in decisions of law arising during the course of the trial.

"Sixth:    That the jury which tried the cause was guilty of misconduct, by which a fair and due consideration of the case was prevented.

"Seventh:    That certain jurors formed and expressed an opinion as to the guilt of the defendant, and against defendant, prior to the time of the trial of said cause, and concealed such facts upon their examination as to their qualifications as jurors, as shown by the affidavits filed herewith, and in support of this motion, and by reason of which a fair trial in said cause was prevented.

"Eighth:    That certain jurors formed and expressed an opinion as to the sanity of this defendant, and against defendant, at the time of the homicide, and failed to disclose the same upon their examination as to their qualifications as jurors, as shown by the affidavits filed herewith, and in support of this motion, by reason of which a fair trial in said cause was prevented.

"Ninth:    That certain jurors were biased and prejudiced against this defendant, and failed to disclose the fact upon their examination as to their qualifications to sit as jurors.

"Tenth:    That the county attorney and deputy county attorney were guilty of misconduct in their argument to the jury.

"Eleventh:    That the jury disregarded the great weight of the evidence on the question of the defendant's sanity, and determined said verdict by other influence than the evidence in the case.

"Twelfth: That the jury disregarded the great weight of the evidence upon the question of the defendant's insanity, and determined said verdict under the influence of prejudice and passion."

And in support of this motion for a new trial various affidavits were filed and presented to the court. After considering said motion, the court overruled the same, and pronounced judgment on the verdict. To which overruling of said motion the defendant excepted, and to the pronouncing of judgment the defendant saved an exception, and brings the cause here for review.

Opinion of the court by

IRWIN, J.: In this case there are several assignments of error by counsel for plaintiff in error, but we think it only necessary to consider one, to-wit: That the court erred in overruling plaintiff in error's motion for a new trial on the grounds that biased and prejudiced persons acted as jurors in the trial of said cause. According to the affidavit of J. D. Coyner, as shown on page 377 of the record, one of the jurors who sat on the trial of this case, R. A. Dilly, is said to have made the following statement at a time a few days prior to his being called as a juror; while on his way to church in company with the said Coyner, Dilly remarked: "That there seemed to be a very strong case against Ellis, and that if one-half of what Hellers, the stone-mason, said at the restaurant was true, he, Ellis, ought to be hung, and he believed the stone-mason knew what he was talking about, and appeared to be a truthful man, and well acquainted with the case." Coyner replied: "That it was a bad case if Ellis was sane, but that there was some doubts in his mind as to

Ellis's sanity;" Dilly said: "That was an old dodge when a fellow got into a close place;" affiant replied: "Yes, it has got many a man out of a bad place or scrape;" he said: "Yes, it has." The examination of this juror as shown by the record, pages 15 to 17, inclusive, shows that he stated on said examination that he didn't know anything about the case, except that he had simply heard of the case in the newspapers a few days ago; knew nothing about it, and had no opinion fixed in his mind at this time as to the guilt or innocence of the defendant, and had no opinion as to his sanity or insanity. Another affidavit filed in the case made by one Shadrick T. Robberts, contained in record pages 380 and 381, is that this same juror, in a conversation with said Robberts, in the latter part of February or the first of March, prior to this trial, had said that Ellis, meaning the defendant, was no more crazy than he was, and that he ought to be hung, that these police in Guthrie were too domineering over the country people, and we have got to check them up. It is apparent that if the juror made these statements contained in these affidavits, and then concealed this fact in his examination as to his qualifications as a juror on the trial, he was not a competent juror to try this cause. There is no subject known to the law of more vital importance than the sanctity and purity of the jury system. It is one of the humane provisions of the law that every man charged with crime, no matter what the circumstances surrounding the crime are, or how strong the case appears to be against him, is entitled under the law, to a trial by a fair and impartial jury. This guarantee of the law lies at the very foundation of our jurisprudence, and any deviation therefrom is such an infringement on the rights of the citizen as cannot be looked

on lightly by the courts. As was said in the case of *State v. Cleary,* 40 Kans. 295, 19 Pac. 776:

"An impartial jury is one of the chief glories of the law. No suspicion should ever rest on the mind of a person convicted of crime that one or more of the jurors to whom the question of his guilt or innocence was submitted entertained either a personal prejudice against him, or had formed or expressed an opinion as to his guilt. Such an impression on the mind of a guilty man would preclude all hope of reformation; while to an innocent one it would be the most glaring injustice, the most foul wrong that could be committed. It therefore becomes the duty of the court to investigate a charge of this character most thoroughly, and, if there is any doubt as to whether the juror was fair and free, to resolve that doubt, as we do all others, in favor of the defendant."

In the case of *Jeffries v. State,* 21 Southern Rep., page 526, the court says:

"It was error to deny a new trial for murder, after a showing that a juror stated before the trial that defendant was not justifiable for killing the deceased, after he had been duly examined on *voir dire* and had stated under oath that he was not biased or prejudiced, and that the statement was not known to counsel until after verdict."

Now it seems to us that there can be no doubt, that if the juror Dilly made the statements charged to him in these affidavits, he was not a competent juror to try this case, and a new trial should have been granted; as, if there was any doubt as to the impartiality of the juror, and that doubt was sustained by reasonable evidence, the district court should have resolved that doubt in favor of the defendant. This, it is apparent, the court did not do, as the motion for a new trial on this ground was overruled. Now this question may

have been and no doubt was disposed of by the district court upon the theory that the allegations that these statements were made by the juror was not sustained by the evidence. The rule adopted by this court is, that the finding of the district court upon a question of fact will not be disturbed if the evidence reasonably tends to support such finding. Then the question occurs, did the evidence as to these statements having been made by the juror, reasonably tend to support the findings of the court? The juror by his affidavit contradicts in express terms both Coyner and Roberts, and denies that any such conversation as contained in their affidavits, ever took place. In determining this question the court will be governed by the same rules of evidence that it would in determining any other question submitted to it for a judicial determination. If the matter rested entirely upon the evidence of the witness Roberts and the witness Coyner, on the one hand, and the juror Dilly on the other, we might be reluctant to say that the holding of the court that the truth of the affidavits were not sufficiently established, would not be sustained, and that there was not sufficient evidence to support such a finding. But the record contains still other affidavits bearing upon this question. Record page 374 contains the affidavit of S. R. Bates, in which Bates makes the statement that he is now and has been for several years last past a resident of the city of Guthrie; that he is now and has been for more than one year last past proprietor of the Bates restaurant, located on First street in said city; that Dilly, one of the men who composed the jury in the Ellis murder case, boarded and roomed at said restaurant for several days immediately prior to this trial; that the office room of said restaurant is twenty by twenty-two feet; that during

the week preceding the trial of this case, in the district court, the principal topic of conversation among the boarders and patrons of said restaurant, was the coming trial of Ellis; that one of the boarders, C. W. Hellers, a stone-cutter, both at the table and in the office, of said restaurant, and in a loud tone of voice, detailed the circumstances and facts attending the killing of young Clayton by said Ellis, and this he repeated every night, often adding to the details of the killing certain profane and vulgar epithets, not necessary to mention in this connection; said Hellers expressing the opinion that the defendant, Ellis, ought to be hung; affiant further states that every word spoken by said Hellers on these different occasions could be plainly heard by every one in the office, and in fact in the restaurant. Affiant further states that the said juror, Dilly, was present three nights, that is the nights of the 12th, 13th and 14th of March, 1903, in the office of said restaurant, and at other times when the said Hellers was discussing the Ellis case; that said Dilly sat in full view and hearing of the said Hellers, while he was talking about the case, and in which he showed very great interest. That one Kirkendall, a carpenter, boarded there at the time, and that he joined in the discussion of the case, and expressed himself in the strongest terms against Ellis. Stephen R. Bates makes affidavit on page 376 of the record, in which he makes practically the same statements as Stephen R. Bates, Jr. J. D. Coyner, in his affidavit, also corroborates the Bates, Sr. and Jr., as to the witness Dilly being in the room, and in hearing distance of the conversation of the stone-mason, Hellers. Arthur Carpenter, in his affidavit, record, page 379, also makes practically the same statement as to Dilly's presence in the restaurant, and as to the conversation that took

place by Hellers and others in his presence. Now it seems to us that if these various conversations as to the Ellis case took place in the restaurant as detailed by these several witnesses, and the statements concerning Ellis were made as detailed by them, and in a room which was only twenty by, twenty-two feet in size, that it would be unreasonable to say that this juror, Dilly, could be present in that room and not hear these conversations, if he had the hearing of an ordinary man. Dilly, by his affidavit, pages 389 and 90, says: That he did not hear and was not present and heard the said Hellers discussing the Ellis case, and didn't sit in full view and hearing on the nights of the 12th, 13th and 14th of March, or any other time, and that if any such conversation took place he didn't hear it; that he didn't hear Kirkendall or any other person discussing the Ellis case there at any time, and didn't hear any one discussing the same, and heard nothing said about the sanity or insanity, guilt or innocence of the said Ellis, and knew nothing about it, and heard nothing about it, there or elsewhere, except as disclosed on his examination touching his qualifications to serve as a juror. Now it seems to us apparent from all the circumstances, that if these conversations were had they could not reasonably have taken place and Dilly not have heard them. Here are four witnesses who seem to be disinterested, who testify positively that he was in a room, twenty by twenty-two feet square, in plain view of the talker, and this man Hellers made these statements in a loud tone of voice; and it seems to us that with the testimony of these four witnesses on one side, and the simple, unqualified denial of Dilly on the other, that the finding of the court that this evidence does not establish the fact that these conversations took place, and that he heard them, is

not reasonably sustained by the evidence. This is not all. It is apparent by an examination of these affidavits that the juror Dilly not only contradicts these four witnesses as to these conversations having taken place, by Hellers, but he disputes the witness Coyner as to the statements made on the way to church. He also disputes the witness Roberts as to the statements made to him, in February or March preceding the trial. Ordinarily, in weighing the testimony of a witness, if the court or jury finds that he has disputed the testimony of many witnesses on the same point, they are very apt to look at his testimony with suspicion, and when we look at and consider all of the evidence upon this point, and then consider that the only denial is the simple, unqualified denial of the juror, we are not prepared to say that the finding of the court, against the truth of these affidavits, is reasonably sustained by the evidence. This being true, we think the action of the court in overruling the motion for a new trial was reversible error.

This case being reversed and sent back to the district court, for a new trial, we do not deem it advisable to express an opinion as to the weight of the evidence, on the question of sanity or insanity.

For the reasons herein expressed, this case is reversed and remanded to the district court, with instructions to grant a new trial, and the warden of the penitentiary is instructed to deliver the defendant to the sheriff of Logan county, and the sheriff of Logan county is instructed to return the defendant to the county jail of Logan county to await the action of the district court.

Burwell, J., who presided in the court below, not sitting; Burford, C. J., not sitting; all the other Justices concurring.