No. 10,221.

BAKER v. THE PEOPLE.

Decided July 3, 1922. Rehearing denied October 2, 1922.

Plaintiff in error was convicted of murder.

*Affirmed.*

1. CRIMINAL LAW—*Testimony—Impeachment.* Where an attempt is made to impeach a witness by showing that he has made statements out of court inconsistent with his testimony at the trial, he cannot be sustained by proof of prior statements consistent with his evidence given on the witness stand. Such statements are not competent as completing a conversation, part of which had been detailed, they being hearsay and inadmissible.

2. *Evidence—Hearsay.* In a murder case, the defense being insanity, evidence showing warnings given a wife to watch her husband, the defendant, as a person mentally deranged, is inadmissible under the rule against hearsay testimony.

3. *Evidence—Opinions.* The inference of an ordinary observer as to the mental condition of a designated person, is admissible in evidence.

4. *Evidence—Record of Proceedings.* Where one on trial for murder makes the defense of insanity, and in support thereof introduces evidence to the effect that his mother was judicially declared of unsound mind, the verdict and decree in such insanity proceeding are sufficient without the entire record of the proceedings, and it was not error to exclude the latter.

5. APPEAL AND ERROR—*Excluded Evidence—No Objection in Trial Court.* Objections to the exclusion of evidence not raised in the

court below, will not be noticed on appeal.

6. WITNESSES—*Expert—Contradiction.* Standard treatises cannot be read in evidence to contradict an expert or skilled witness, unless the witness assumes to base his opinion on a particular work, in which case such work may be read in evidence to contradict him.

7. CRIMINAL LAW—*Depositions.* Depositions cannot be taken of nonresident witnesses in a criminal case, except by authority of statute, and there is no statute in Colorado authorizing such procedure.

8. *Witnesses—Endorsement on Information.* There is no error in permitting the district attorney to endorse witnesses on the information in the absence of a showing that such permission prejudiced the rights of the defendant.

9. *Murder—Instructions.* In a murder case, the error, if such there was, in giving an instruction on second degree murder, was cured by a finding of murder in the first degree.

10. *Instructions—Malice.* Instructions on malice in a murder case reviewed and held sufficient.

11. *New Trial—Misconduct of Jurors.* Prior expressions by a juror of opinions adverse to a defendant in a criminal case, are not alone sufficient to establish such bias as requires a new trial, where there is no evidence that the juror did not intend to give a special defense interposed, proper consideration, and that he did not in fact impartially consider the testimony on that issue. Nor will a new trial be granted where it appears that a defendant was not injured by a juror's bias.

*Error to the District Court of Montrose County, Hon. Straud M. Logan, Judge.*

Mr. M. D. VINCENT, Mr. S. N. WHEELER, Mr. HUGO SELIG, for plaintiff in error.

Mr. VICTOR E. KEYES, attorney general, Mr. CHARLES R. CONLEE, assistant, Mr. SAMUEL CHUTKOW, assistant, Mr. FORREST C. NORTHCUTT, assistant, Mr. LEE W. BURGESS, Messrs. MOYNIHAN, HUGHES, KNOUS & FAUBER, for the people.

*En banc.*

MR. JUSTICE ALLEN delivered the opinion of the court.

THE plaintiff in error was convicted of the crime of murder in the first degree, and brings the case here for review.

The information charges that the defendant, on November 1, 1920, murdered one James F. Kelley. The shooting and killing of Kelley was admitted by counsel for defendant, who interposed a plea of insanity. That was the sole defense. Numerous errors are assigned concerning the admission or rejection of testimony.

J. H. Gill, a witness called by the defendant, testified on direct examination to the effect that the defendant at and after the arrest, shortly following the killing, was mentally unbalanced. The prosecution on cross-examination attempted to lay a foundation for impeachment and to show that the witness made some statements, at the time in question, to the effect that the defendant was sane. The defendant then offered to prove by the witness Robert Stewart Nixon that the sheriff, the witness Gill, made statements consistent with his testimony at the trial. The offer was refused by the court, and the refusal of this testimony is assigned as error. The weight of authority is in support of the view that a witness cannot be sustained by proof of prior statements consistent with his evidence given on the witness stand. 40 Cyc. 2761. This rule has been established in this state by the decision in *Connor v. People,* 18 Colo. 373, 33 Pac. 159, 25 L. R. A. 341, 36 Am. St. Rep. 295, followed in *DePriest v. People,* 64 Colo. 358, 171 Pac. 1004. See also *Davis v. Graham,* 2 Colo. App. 210, 29 Pac. 1007. There was, therefore, no error in rejecting the offered testimony of the witness Nixon.

It is further contended, however, that this testimony was admissible for the purpose of completing a certain conversation, a part of which was described in the testimony of the witness Gill. If offered for this purpose, it

was hearsay and not admissible. Statements made by a witness to other persons are not an exception to the hearsay rule. 10 R. C. L. 960; *Gillotti v. State,* 135 Wis. 634, 116 N. W. 252.

Counsel for defendant offered to show what warning relatives gave his wife as to keeping a close watch over defendant as a person mentally deranged. The purpose of the offer was to show the conduct of the family toward the defendant, as evidence relevant to his sanity. There was no error in refusing to admit this testimony since, under the circumstances, it was merely hearsay, and, moreover, the immediate relatives of defendant had been permitted to testify concerning their experience with and observations of the defendant.

The defendant moved to strike out the opinion of the people's witness C. O. Ernest as to defendant's sanity after the witness admitted on cross-examination that he had not given any consideration to the subject of defendant's sanity. There was no error in overruling this motion. It was for the jury to consider what weight should be given to the opinion of the witness in the light of the admission above mentioned.

Error is assigned to a ruling permitting the witness Hartman to give his opinion of the sanity of defendant, and error is also assigned to the admission of opinion evidence of the witness Ross concerning defendant's sanity. The inference of an ordinary observer as to the mental condition of a designated person may be received. 22 C. J. 599. There was no prejudicial error in the rulings complained of in these respects.

We have considered the contention that the court erred in not admitting in evidence the entire record of proceedings, including a transcript of the evidence, had in the state of Tennessee, in which proceedings the mother of defendant was adjudged to be a person of unsound mind. The contention cannot be sustained. The court did admit in evidence the verdict of the jury and the decree, and

excluded only the evidence adduced at the hearing on the petition. The verdict and decree fully served the only purpose for which defendant was entitled to use the proceedings in the Tennessee court. If, as counsel contend, the transcript of the evidence was necessary to render other portions of the record admissible, they have no reason to complain of the court's ruling, since the court did admit the verdict and decree, and that was sufficient evidence of the adjudication of the mental condition of the person who was the subject of the inquisition.

It is now urged by counsel for plaintiff in error that the court erred in permitting the witness Dr. Edward Hadley to relate to the jury what he had noticed as to the acts and demeanor of the defendant during the trial because, as they claim, it was an invasion of the province of the jury. This contention need not be considered because the testimony was not objected to on that ground at the trial. We find no prejudicial error in the admission of the testimony of Dr. Hadley or any part of such testimony, or rulings concerning the same, and it would unduly prolong this opinion to answer each assignment of error having reference to such rulings.

It is contended that the court erred in refusing to permit the defendant, on cross-examination of the People's witness Dr. Delehanty, to ask the witness if certain texts, which examining counsel was reading to the witness from medical authorities, were not in accord with standard authorities and whether the witness agreed with the text. If the questions along these lines were intended for purpose of contradiction, the court properly refused to permit such questions on cross-examination since the witness had not, either on his direct examination or as yet on his cross-examination referred to any particular work or authority as sustaining his opinion. In this connection, the rule is stated in 22 C. J. 741, as follows:

"Standard treatises cannot be read in evidence to contradict an expert or skilled witness, unless the witness assumes to base his opinion on a particular work, in which

case such work may be read in evidence to contradict him."

It was not reversible error to sustain an objection to such questions even if they were intended to test the qualifications of the witness for the reason, irrespective of other reasons, that the trial court sustained the objection evidently on the theory that the questions were improper for purposes of contradiction of the witness, the court endeavoring to follow the decision in *Denver Co. v. Gawley,* 23 Colo. App. 332, 129 Pac. 258, where, among other things, the court said:

"It was not proper to cross-examine him by asking him if he agreed with the writings of any medical author, unless he had first testified that he had read such author and regarded his works as of sufficient merit upon which to base his opinion."

This is in accord with the rule stated in 22 C. J. 741, heretofore cited. After the trial court made its ruling, counsel for defendant did not state or show to the court that the purpose of the intended cross examination was not to contradict but to test the qualifications of the witness. In this connection, we agree with the statement of the Attorney General in his brief, that "no such point (that is, propriety of the questions as to testing qualifications of the witness) was raised at the trial." The point need not be considered now, upon the principle, stated in 3 C. J. 824, that "objections to the exclusion of evidence not raised in the court below will not be noticed on appeal."

The trial court denied the application of counsel for defendant for an order authorizing the issuance of a *dedimus* to permit the defendant to take depositions of witnesses residing in the states of Tennessee and California. The denial of such application is assigned as error. Depositions in criminal cases cannot be taken in behalf of a defendant except by authority of statute. 18 C. J. 619, § 23; *Ex parte Harkins,* 6 Ala. 63, 41 Am. Dec. 38; *People v. Turner,* 265 Ill. 594, 107 N. E. 162, Ann. Cas. 1916A, 1062. There is no inherent power in state courts to direct the taking of depositions to be used as evidence. *Young*

*v. State,* 90 Md. 579, 45 Atl. 531. The plaintiff in error contends, however, that the depositions of non-resident witnesses in criminal cases are authorized by sections 7276 to 7278 inclusive, R. S. 1908, taken in connection with the constitutional provision (section 16, article 2) giving defendants the right "to have process to compel the attendance of witnesses in his behalf."

The constitutional provision above mentioned can refer only to witnesses residing within this state. As said in *State v. Pagels,* 92 Mo. 300, 4 S. W. 931: "The right to compulsory process for witnesses does not, and cannot, extend to non-resident witnesses."

Section 7276 R. S. 1908, above cited, authorizes the compelling of a witness to give a bond for his appearance at the trial, or to commit such witness to jail "until his deposition can be taken." This can apply only to resident witnesses, for the reason that a state court cannot compel witnesses residing in another state to attend for any purpose. 40 Cyc. 2162. Section 7277 provides how the deposition of a witness, committed under the provisions of the preceding section, may be taken; and section 7278 relates to the use of such deposition at the trial. We find nothing in any of these sections authorizing, expressly or by implication, the taking of depositions of witnesses who are or who reside without the state. The object of the statute, primarily, is to carry out that provision of section 17, article 2, of the Constitution which reads as follows:

"That no person shall be imprisoned for the purpose of securing his testimony in any case longer than may be necessary in order to take his deposition."

See also, to the same effect, *Ryan v. People,* 21 Colo. 119, 40 Pac. 775.

For the reasons above stated, there was no error in denying the application to take depositions of non-resident witnesses.

Under another assignment of error counsel complain that the court erred in permitting the district attorney to endorse on the information the name of Dr. Isiah Knott

as a witness.   Dr. Knott had testified at the coroner's inquest, held November 3, 1920, over the body of the person killed by defendant.   Counsel for defendant state this fact in the affidavit filed in resisting the application to endorse the name of the witness, but it is not claimed in the affidavit nor otherwise that defendant's counsel did not know what that testimony at the inquest was.   There was no application for a continuance on account of the endorsement of the name of the witness.   The trial court permitted the endorsement on the condition that the testimony of this witness be confined to that given by him at the coroner's inquest.   At the trial Dr. Knott testified concerning the wound and the death of the decedent, but gave no testimony whatever concerning defendant's sanity or any testimony relevant to defendant's defense.   There could be no plainer case than this one where a defendant is not prejudiced by a belated endorsement of the name of a witness on the information.   There was no prejudicial error in this connection.   *Wickham v. People,* 41 Colo. 345, 93 Pac. 479; *Askew v. People,* 23 Colo. 446, 48 Pac. 524; *Boykin v. People,* 22 Colo. 496, 45 Pac. 419; 16 C. J. 797.

The trial court refused to give to the jury an instruction requested by defendant that "the defendant is either guilty of murder in the first degree or is entitled to a verdict of not guilty under his defense of insanity."   The refusal to give this instruction is assigned as error, and counsel also complain of an instruction given upon murder in the second degree, permitting a verdict of murder in the second degree.   It is claimed that the evidence on the part of the People shows murder in the first degree and that there is no evidence of murder in the second degree. For this reason plaintiff in error relies upon the case of *Dickens v. People,* 67 Colo. 409, 186 Pac. 277, to show that the instructions complained of are erroneous.

In the Dickens case the jury returned a verdict finding the defendant guilty of murder in the second degree, and since, as it was held, there was no evidence of murder other than murder in the first degree, the court assumed

that there was a possibility that the jury had and used an opportunity to reach a verdict "through compromise and trade," and might have found the defendant not guilty of any crime if the instructions had been confined to murder in the first degree. It was also said, in effect, that the verdict in that case "had no proof whatever to support it," since the evidence on the part of the people showed only murder in the first degree.

In the instant case, however, the jury found the defendant guilty of murder in the first degree, and this fact renders inapplicable the reasoning followed in the Dickens case, and precludes that case from being decisive of the instant case.

It is said in the Dickens case, citing *Dekelt v. People,* 44 Colo. 525, 531, 99 Pac. 330, 332, that "error is presumed to be prejudicial unless it affirmatively appears from the record that it is not so." It does affirmatively appear in the instant case that the defendant was not prejudiced by the giving of an instruction on murder in the second degree. The jury did not take the opportunity to find him guilty of murder in this degree, and there is no reason to suppose that the jury would not have found, as they did, the defendant guilty of murder in the first degree if the court's instructions had been silent upon the question of murder in the second degree.

The situation existing in the instant case is one falling squarely within the text of 16 C. J. 1024, where it is said:

"Where there is no evidence tending to prove the commission of the lower offense, * * * giving an instruction in such a case on the lower degree may not be an error of which defendant can complain."

The verdict finding murder in the first degree cured the error, if such it was, of giving an instruction on murder in the second degree.

It is also contended that it was error to instruct the jury as follows:

"The jury may infer malice, as above described, from

the intentional and unlawful use of a deadly weapon in a manner likely to produce death."

This instruction must be read in conjunction with the further instruction, given by the court, reading as follows:

"The court instructs the jury that malice is not a presumption of law, but is a fact, for the jury to determine from the evidence, under the instructions of the court."

These instructions were correct. Even standing alone, the instruction complained of does not violate the rule, insisted on by plaintiff in error, that malice is a question of fact to be found by the jury, and much less does it tend to do so when read in connection with the second instruction above quoted.

Other instructions are complained of, but we find nothing in such instructions constituting prejudicial error, nor do we find error in the refusal to give instructions requested.

It is contended that the court erred in denying the motion for new trial upon the ground of misconduct of two of the jurors. In this contention it is claimed that the juror Hotchkiss and the juror Haney entertained bias and prejudice against the defendant and concealed the fact on their examination on the voir dire.

With reference to the juror Hotchkiss, the record abundantly sustains the conclusion that he was not disqualified by reason of bias, prejudice, or a fixed opinion. Most of the argument advanced in support of the contention above stated is made concerning the juror Haney. The defendant filed separate affidavits of four persons, each of whom deposed to the effect that prior to the trial the juror Haney made statements that defendant "ought to be hung."

The question on the hearing of the motion for new trial was not whether the juror had made these statements but was whether he was biased and prejudiced against the defendant. Prior statements may be shown as proof. The juror made an affidavit denying having made the remarks

attributed to him. In *State v. Morrison,* 67 Kan. 144, 72 Pac. 554, the court said:

"In the first place, the positive denials of the jurors to the making of the disqualifying statements are entitled to much consideration and weight."

It may be assumed, however, that the evidence establishes that the juror Haney made the statements charged against him. If he did make them, it does not necessarily follow that he was disqualified to act as juror. In 16 C. J. 1155, it is said:

"Prior expressions of opinion adverse to defendant are not alone sufficient to establish such bias as requires a new trial."

The killing is admitted. The circumstances attending the homicide were such as to provoke comment, and it would tend to obstruct the administration of justice, with little benefit to persons accused of crime, to hold that the making of remarks derogatory to a defendant would disqualify one to act as juror.

There is no showing in the instant case that the juror Haney at the time of the making of the alleged remarks knew that defendant would interpose the defense of insanity, or that he made any comment on such defense. In *Ellis v. Territory of Oklahoma,* 13 Okla. 633, 76 Pac. 159, cited by plaintiff in error, the juror said that the defense of insanity "was an old dodge," and "got many a man out of a bad place or scrape." The juror Haney could have had an opinion to the effect that defendant killed Kelley without provocation, but that opinion, even if fixed, would not be prejudicial to defendant, since the latter relies entirely on his defense of insanity. There is no evidence that the juror did not intend to give such a defense proper consideration or that he did not, in fact, impartially consider the testimony on that issue. In 16 C. J. 1155, it is further said:

"Nor will a new trial be granted where it appears that defendant was not injured by the juror's bias."

There was no error in denying the motion for new trial

on the ground that one or more of the jurors were disqualified by reason of bias, prejudice or fixed opinions. The evidence is sufficient to support the verdict. There is no reversible error in the record.

The judgment is affirmed.

MR. CHIEF JUSTICE SCOTT and 'MR. JUSTICE CAMPBELL not participating.