**STATE of Tennessee, Appellant,**

v.

**James A. SINGLETON, Appellee.**

Supreme Court of Tennessee,
at Knoxville.

May 3, 1993.

Charles W. Burson, Atty. Gen. & Reporter, Rebecca L. Gundt, Asst. Atty. Gen., Nashville, for appellant.

R. Jackson Rose, Cumberland Gap, for appellee.

## OPINION

DAUGHTREY, Justice.

We granted review in this case at the state's request, in order to review a ruling by the Court of Criminal Appeals allowing the trial court to force unwilling police witnesses to submit to pretrial interviews with defense counsel.

The defendant, James "Jap" Singleton, was convicted of selling marijuana to four undercover police officers. The Court of Criminal Appeals reversed the conviction, finding that the trial court had prejudiced the defendant by refusing to grant him interviews with the state's only witnesses, the undercover agents. As relief, the intermediate court then granted the defendant a new trial based on newly discovered evidence seriously impeaching the testimony of the officers. Although we reverse the court's holding that a trial court may order unwilling police witnesses to submit to interviews, we nevertheless remand the case to the trial court for a new trial on the basis of the newly discovered evidence—or, more accurately, "newly relevant evidence."

This case was initiated by the return of a presentment nine months after the alleged marijuana sale took place. The defendant was not afforded a preliminary hearing and thus had no opportunity to glean information about the state's case against him through formal proceedings. His attorney attempted to interview the police officers prior to trial, but the officers refused to discuss the case. After a jury was selected, defense counsel requested a continuance and a court-ordered opportunity to interview the officers in order to prepare his defense. The court denied the request, and the defendant went to trial without knowing the extent of the state's case against him.

At trial, two of the four agents involved in the undercover operation testified to Singleton's participation in the sale of marijuana. According to the agents, after a man named Melvin Dunaway initially sold them a small amount of marijuana at a Grainger County truck stop, they asked to buy a larger amount. Dunaway then conversed with the defendant and Randy Lane, the co-defendant, out of the agents' hearing. The officers testified that Singleton handed Lane a set of keys and that Lane then took the agents to the defendant's truck, where he got the marijuana that he sold to them. After the sale, Lane returned inside the truck stop and allegedly handed Singleton his keys. The handing of the truck keys to Lane and the presence of the marijuana in his truck was the only evidence linking Singleton to the sale.

The defendant's witnesses, however, denied Singleton's involvement in the sale.

Co-defendant Randy Lane testified that Singleton knew nothing about the sale and, furthermore, that the defendant's truck lacked keys. Another defense witness, Johnny Cooper, testified that he had driven Singleton and Lane to the truck stop that night, and that Singleton's truck operated without keys. Because defense counsel could not have anticipated the agents' testimony about the handing off of keys, he offered no independent evidence at trial to contradict this crucial testimony linking the defendant to the sale.

In his motion for a new trial, the defendant not only claimed that there was insufficient evidence to convict him, he asserted that the state should not have been able to use the testimony of the officers who had refused to give him pretrial interviews. He also moved for a new trial on the basis of newly discovered evidence in the form of several affidavits verifying the nonexistence of keys to his truck. Hobart Bunch, a used car salesman, swore by affidavit that he sold the truck to its former owner without keys. In another affidavit this former owner stated that the truck operated without a key and that she sold the truck to the defendant without a key. Finally, the defendant submitted a copy of a police warrant noting that the truck ran without a key. The defendant argued that this newly discovered evidence warranted a new trial because it undermined the officers' testimony to such an extent that a new jury would likely acquit him.

The trial judge, although dubious about the strength of the evidence to support the conviction, denied the motion for a new trial. On appeal, the Court of Criminal Appeals reversed the trial court's judgment and held that the defendant was entitled to a new trial on the basis of the newly discovered evidence. The intermediate court also held that the officers should have been forced to submit to pretrial interviews. In a departure from current Tennessee law, the court held that

> ... trial courts may, in their discretion, order law enforcement officers to submit to a pretrial interview by the defense, as to unprivileged information, once it can be either established that the defense has

exercised reasonable diligence in its unsuccessful attempts to obtain facts essential to the preparation of its case or established that such attempts would be futile.

The intermediate court also conditioned the granting of such interviews on the defendant's reasonable expectation that the witness would have the knowledge sought, on the materiality of the information sought, and on there being no other reasonable means of obtaining the information. Finding that the officers' refusal to talk to defense counsel prejudiced the defendant in the preparation of his case, the Court of Criminal Appeals remanded for a new trial on this ground as well.

The Court of Criminal Appeals based this ruling on *State v. McDevitt*, 297 A.2d 58 (Del.Super.Ct.1972), a lower court case from Delaware that appears to be the only authority for allowing defense counsel the right to interview police witnesses. Relying on *McDevitt*, the Court of Criminal Appeals cited the courts' inherent power to govern discovery and the special duties of police officials as reasons for permitting courts to order interviews with unwilling police officers. But, a close reading of *McDevitt* indicates that in reaching this conclusion, the Delaware court was merely following the dicta of another Delaware case, *Wisniewski v. State*, 51 Del. 84, 138 A.2d 333 (1957), which held that it was improper for the state to *prohibit* a witness from talking with defense counsel. *Wisniewski* assumed in dicta that courts have the inherent power to order witnesses to discuss the facts of cases with counsel, but that question was not before the court for determination.

■ It is now before us, and we conclude that a rule permitting trial courts to order police witnesses to speak to defense counsel would be a significant and unwarranted departure from the current state of Tennessee law. For example, the Tennessee Rules of Criminal Procedure lack a mechanism to force prospective witnesses to discuss their testimony with counsel before trial. Rule 15 of the Tennessee Rules of

Criminal Procedure narrowly restricts the availability of depositions in criminal cases, reserving their use to "exceptional circumstances," when the "interest of justice" requires that a deposition be taken to preserve the testimony of a prospective witness who is unlikely to be able to testify at trial. The Committee Comment to the Rule reflects the drafters' intention "to make it clear that depositions are not meant to function as discovery devices in criminal cases." Likewise, there is nothing in Rule 16, governing pretrial "discovery and inspection," that could be taken to authorize court-ordered interviews with otherwise unwilling witnesses.

■ Tennessee case law, moreover, gives a prospective witness the discretion to talk—or not to talk—to either counsel, as the witness sees fit. Of course, the law also provides that counsel may not instruct a witness not to discuss the facts of a case with opposing counsel. In *Gammon v. State*, 506 S.W.2d 188, 190 (Tenn.Crim.App. 1974), the Court of Criminal Appeals restated the well-recognized principle that

> [p]rospective witnesses are not partisans, and they should be regarded as spokesmen for the facts as they see them. Because they do not 'belong' to either party, a prosecutor, defense counsel or anyone acting for either should not suggest to a witness that he not submit to an interview by opposing counsel.

In this case, the defendant does not allege that the state violated *Gammon* by instructing the officers not to speak to defense counsel. As long as *Gammon* is not violated,

> [a] defendant is entitled to have *access* to any prospective witness although such right of access may not lead to an actual interview. * * * [A]ny witness has the right to refuse to be interviewed, if he so desires (and is not under or subject to legal process). * * * The importance of the rights of access is somewhat tempered by the witness'[s] equally strong right to refuse to say anything.

*See also United States v. Scott*, 518 F.2d 261, 268 (6th Cir.1975); *United States v. Munsey*, 457 F.Supp. 1, 4 (E.D.Tenn.1978).

In *Munsey*, the Sixth Circuit Court of Appeals explained that "witnesses are neither the property of the government nor of the defendant, but . . . a witness is free to talk with a lawyer for the adversary party or not talk with such counsel." *Munsey*, 457 F.Supp. at 4.

This rule has a long common law heritage. Common law provided no right to discovery depositions. *Minder v. Georgia*, 183 U.S. 559, 22 S.Ct. 224, 46 L.Ed. 328 (1902). The United States Supreme Court has held that a state's denial of the right to discovery in a criminal case is not a denial of due process or equal protection. *Id.* In light of this history, the Federal Rules of Criminal Procedure, like Tennessee's Rules, permit depositions only to preserve testimony for trial. *See* Fed.R.Crim.P. 15; *United States v. Rich*, 580 F.2d 929 (9th Cir.), *cert. denied*, 439 U.S. 935, 99 S.Ct. 330, 58 L.Ed.2d 331 (1978). Federal case law consequently permits witnesses to decide whether or not to talk to counsel. *See Kines v. Butterworth*, 669 F.2d 6, 9 (1st Cir.1981), *cert. denied*, 456 U.S. 980, 102 S.Ct. 2250, 72 L.Ed.2d 856 (1982); *United States v. White*, 454 F.2d 435, 438 (7th Cir.1971), *cert. denied*, 406 U.S. 962, 92 S.Ct. 2070, 32 L.Ed.2d 350 (1972); *United States v. Fink*, 502 F.2d 1 (5th Cir.1974), *rev'd on other grounds*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976).

In the absence of a statute or procedural rule providing for pretrial discovery depositions, the general rule in other jurisdictions is that a defendant is not entitled to a deposition. In *Kardy v. Shook*, 237 Md. 524, 207 A.2d 83 (1965), for example, the defendant requested information about a prospective witness's testimony in order to prepare for trial. The trial court granted the defendant a deposition, and the Maryland Court of Appeals reversed, finding that such a rule "would revolutionize the time-honored and well-established criminal procedure of this State." *Id.* at 534, 207 A.2d at 89. Although the trial court had based its holding on its "inherent discretionary power," the state's high court found no statute or rule of court upon which to base such a novel holding, and

observed that the rule would "entail[ ] pervasive consequences in the administration of the criminal laws of this State." *Id.* at 535, 207 A.2d at 89. In rejecting the trial court's decision, the reviewing court noted that it did not wish to be read as "intimat[ing] that the State 'owns' the witnesses whom it intends to produce at a criminal prosecution." *Id.* at 541, 207 A.2d at 92. Indeed, the court said, "[t]he defendant and his counsel are at perfect liberty, as they always have been in this State, to interview and interrogate any prospective witness, subject, of course, to the witness'[s] acquiescence in such interrogation." *Id.* *See also Dixon v. State,* 27 Md.App. 443, 340 A.2d 396 (1975).

In *Westry v. Commonwealth,* 206 Va. 508, 144 S.E.2d 427 (1965), the Virginia Supreme Court denied the defendant's motion to take discovery depositions of two police officers in the absence of statutory authority. Quoting *Setliff v. Commonwealth,* 162 Va. 805, 173 S.E. 517 (1934), the court reiterated that

> [w]hile depositions have been used in chancery proceedings since early times, their use as evidence in criminal cases, as in civil suits at law was unknown to the common law. The right to take depositions in other than equity cases can, therefore, be conferred by statute, which must be clear. . . .

*See also Baker v. People,* 72 Colo. 68, 209 P. 791 (1922) ("Depositions in criminal cases cannot be taken on behalf of a defendant except by authorization of statute.").

Other states strictly limit the use of depositions as provided by their statutes or procedural rules. In *Clark v. Superior Court of San Francisco,* 190 Cal.App.2d 739, 12 Cal.Rptr. 191 (1961), the California court refused to allow a criminal defendant to take the depositions of witnesses because a statute provided that depositions could only be taken in cases in which a witness lives outside the state, will likely leave the state, or is sick. In *People v. Municipal Court for Pasadena Judicial Dist.,* 20 Cal.3d 523, 532, 143 Cal.Rptr. 609, 614, 574 P.2d 425, 430 (1978), the court held

that "it would be both improper and unwise for the California courts to exercise their inherent power over discovery matters to provide for depositions in situations not presently authorized by statute." The Kansas Supreme Court also refused to admit depositions when a defendant could not show that they were necessary to perpetuate testimony, as that state's statute required. *State v. Goodman,* 207 Kan. 155, 483 P.2d 1040 (1971). Finally, after analyzing the "troublesome" problem of criminal discovery, the New Jersey Supreme Court found that its "rules of court do not authorize pretrial discovery in criminal matters by way of deposition of witnesses." *State v. Tate,* 47 N.J. 352, 353, 221 A.2d 12, 13 (1966). The *Tate* court, therefore, refused to force prospective witnesses to submit to interviews or to be deposed, and concluded that "[w]hether our rules should be amended to go further cannot be decided satisfactorily within the confines of a particular case. The topic can be explored more satisfactorily in the rule-making process at hearings open to all. . . ." *Id.* at 357, 221 A.2d at 15.

Much debate occurred in the 1950's and 1960's on the appropriate extent of pretrial discovery in criminal cases. Proponents of liberal discovery have long argued that full discovery better reveals the truth than does restrictive discovery. On the other hand, opponents of liberal discovery claim that a criminal defendant is more likely to commit perjury and to intimidate witnesses if he knows the details of the state's case against him. Opponents cite, too, the staggering cost of discovery and argue that full discovery would greatly slow the criminal justice process. They also claim that the privilege against self-incrimination makes discovery one-sided and unfair to the state.[1]

Having weighed these arguments, several states have developed statutes or procedural rules permitting depositions for discovery purposes as well as for the preservation of testimony. Vermont underwent the first statutory revision. *See* Vt.Stat. Ann. tit. 13, §§ 6721–27 (1961) (repealed

---

1. *See generally* 2 W. LaFave & J. Israel, *Criminal Procedure* § 19.3, at 474–481 (1984).

1973). Rule 15(a) of the Vermont Rules of Criminal Procedure now allows either the defendant or the state to take the discovery deposition of a witness without court order. Nevertheless, when first confronted with an interpretation of the statute in *State v. Mahoney*, 122 Vt. 456, 176 A.2d 747, 749 (1961), the court commented that the "[a]uthority to take testimony by deposition is in derogation of common law and must therefore by strictly construed."

Several other states have liberalized their criminal discovery rules. Arizona allows depositions of anyone except the defendant to be taken when the testimony is "material to the case" or "necessary adequately to prepare a defense," but only if the witness did not testify at the preliminary hearing and will not grant a personal interview. Ariz.R.Crim.P. 15.3(a). In Washington, if a "witness refuses to discuss the case," if the "testimony is material," and if a deposition would "prevent a failure of justice," counsel may depose the witness. *See* Wash.R.Crim.P. 4.6(a). A statute in Iowa provides that a defendant may depose witnesses "in the same manner and with like effect as in civil actions." *See State v. Peterson*, 219 N.W.2d 665, 668–69 (Iowa, 1974); Iowa R.Crim.P. 12(a). In *Nuckles v. State*, 250 Ind. 399, 402, 236 N.E.2d 818, 819 (1968), the Indiana Supreme Court, considering the pretrial depositions of police officers to be a "proper part of an adequate preparation for trial," allowed them pursuant to an Indiana statute. In each of these states, however, the legislature has approved the use of discovery depositions, or their use is authorized by procedural rules.

Neither the Tennessee statutes nor the Rules of Criminal Procedure provide for such liberal use of pretrial depositions. In Tennessee, counsel must rely instead on other methods to discover the facts of a case. For example, Tenn.R.Crim.P. 5.1 allows a defendant to cross-examine witnesses at a preliminary hearing. This Court, in *McKeldin v. State*, 516 S.W.2d 82, 84–86 (Tenn.1974), *appeal after remand*, 534 S.W.2d 131 (Tenn.Crim.App.1975), *cert. de-*

*nied*, 425 U.S. 901, 96 S.Ct. 1490, 47 L.Ed.2d 751 (1976), stated in dicta that while discovery is not the primary purpose of a preliminary hearing, the hearing is "a golden opportunity ... to learn the precise details of the prosecution's case, and to engage in that happy event sometimes known as a fishing expedition." Moreover, Tennessee law requires the state to furnish the defendant with a list of witnesses prior to trial. T.C.A. § 40–17–106. Although these avenues of limited discovery may not prove helpful in every case, they are among the only means of discovery currently provided in criminal cases.

Also weighing against the development of a court-made discovery rule is the impossibility of limiting the application of the Court of Criminal Appeals's ruling. Although the court's opinion purports to limit interviews to those situations in which the "witness is reasonably expected to be aware of the information" and to cases in which the "information is material," neither the defendant nor the court can determine the extent of a witness's knowledge or the materiality of the witness's information in the absence of an interview or deposition. Often, as occurred here, the evidence in question turns out to be material only in hindsight. Thus, the rule would inevitably allow the pool of permissible interviewees to include all police witnesses.

Another significant problem with the Court of Criminal Appeals's holding is that its limited application to police officers could logically be expanded to include all potential state witnesses. The court strongly supported its premise that police officers occupy a "dual role in society"[2] that allies them with prosecutors in criminal cases. Nevertheless, victims and other state witnesses may have an equally strong desire to see defendants convicted, and when advised of their right to refuse to talk with defense counsel, they may view silence as a way to avoid aiding the defense. Our present law gives potential witnesses that prerogative. Because we do not perceive the police witness's desire to obtain convictions as being necessarily

---

**2.** *State v. McDevitt*, 297 A.2d 58 (Del.Super.Ct.1972).

greater than that of other witnesses, we believe that a rule permitting pretrial interviews only with police officers inevitably presages the logical extension of the rule, thus providing for more discovery than the Court of Criminal Appeals intended and far more than the rules of procedure currently permit.

Finally, while we are sympathetic to defense counsel's need to discover the facts against which he must defend, such a need for discovery can be asserted in every case. In this particular case, the defendant lacked the opportunity for cross-examination that a preliminary hearing often provides, and he was unable to elicit information voluntarily from the state's witnesses. By asserting one's innocence, however, any defendant can claim ignorance of the facts of his case. In *People v. Municipal Court,* 20 Cal.3d at 532, 143 Cal.Rptr. at 614, 574 P.2d at 430, the California Supreme Court refused to grant discovery depositions of police officers to a defendant who, having been knocked unconscious during his arrest, could not remember the incident. That court held that "a showing of 'need' ... could be satisfied by *any* assertedly innocent accused who denies his presence at the crime scene...." *Id.* at 531, 143 Cal.Rptr. at 613, 574 P.2d at 429 (emphasis in original). Thus, we cannot use the defendant's asserted need for information as a reason to expand discovery beyond that presently authorized by statute.

Because of the many policy considerations surrounding discovery in criminal cases, we conclude that any change in the current procedure should result from a revision of the discovery rules rather than a court decision. At the same time, we recognize that our reluctance to require pretrial interviews of unwilling police witnesses may have an unfortunate consequence, which is that a defendant may be wholly unprepared to meet facts that first emerge at trial. In the absence of a discovery mechanism to glean such facts before trial, the trial courts must be prepared to use their authority to grant a new trial when the state presents evidence material to the defendant's theory of defense, which would likely have prevented a conviction had it been disclosed to the defendant prior to trial, but which was not disclosed because of the witness's refusal to be interviewed, and which was not otherwise subject to discovery. Under circumstances such as those in this case, a new trial is the price that must be paid for the lack of more comprehensive pretrial discovery mechanisms.

■■■ In so ruling, we do no more than apply an "old rule" to a new set of facts. It has long been recognized under Tennessee law that a trial court should grant a defendant a new trial on the basis of newly discovered evidence when the defendant has been reasonably diligent in obtaining evidence, the materiality of the new evidence is apparent, and the evidence is likely to change the result. *State v. Goswick,* 656 S.W.2d 355 (Tenn.1983); *Taylor v. State,* 180 Tenn. 62, 171 S.W.2d 403 (1943); *United States v. Terry,* 729 F.2d 1063 (6th Cir.1984). It is true that newly discovered impeachment evidence will not constitute grounds for a new trial, as a general rule. But if the impeaching evidence is so crucial to the defendant's guilt or innocence that its admission will probably result in an acquittal, a new trial may be ordered. *State v. Rogers,* 703 S.W.2d 166, 169 (Tenn. Crim.App.1985); *Rosenthal v. State,* 200 Tenn. 178, 185–86, 292 S.W.2d 1, 4–5, *cert. denied,* 352 U.S. 934, 77 S.Ct. 222, 1 L.Ed.2d 160 (1956); *Evans v. State,* 557 S.W.2d 927, 938 (Tenn.Crim.App.1977). Moreover, when the verdict is already one of questionable validity, newly discovered evidence of relatively minor importance may be sufficient to create the probability of acquittal. *Cagle v. Davis,* 520 F.Supp. 297, 309 (E.D.Tenn.1980), *aff'd* 663 F.2d 1070 (6th Cir.1981). Because the evidence linking Singleton to the sale of marijuana was based on the agents' testimony that Singleton handed the co-defendant, Lane, a set of keys to the defendant's truck, new evidence that conclusively establishes the nonexistence of a key to the truck seriously weakens the case against the defendant. The trial judge acknowledged that "it was a close case on the proof." Given the minimal evidence of guilt and the impor-

tance of the officers' credibility to the conviction, we are convinced that justice requires a new trial.

In conclusion, we are unprepared to sustain the Court of Criminal Appeals's holding permitting the trial court to order unwilling police witnesses to submit to pretrial interviews with counsel. We nevertheless uphold the judgment of the Court of Criminal Appeals ordering a new trial on the basis of newly discovered evidence seriously impeaching the credibility of the undercover agents who testified for the state.

Affirmed and remanded.

REID, C.J., and DROWOTA and ANDERSON, JJ., concur.

O'BRIEN, J., concurs in result only.