# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs March 19, 2002

## STATE OF TENNESSEE v. HAMADI  G.  HALEY

### Appeal from the Criminal Court for Knox County
### No. 70074    Mary Beth Leibowitz, Judge

---

### No. E2001-01244-CCA-R3-CD   Filed April 22, 2002

---

The defendant, Hamadi G. Haley, was convicted of felony murder, especially aggravated robbery, and aggravated robbery.  The trial court imposed a sentence of life with the possibility of parole for the felony murder, 17 years for the especially aggravated robbery, and eight years for the aggravated robbery, with all terms to be served concurrently.  In this appeal of right, the defendant claims that he was denied access to material witnesses by the state and that he should have been granted a new trial based on newly discovered evidence.  The judgments of the trial court are affirmed.

### Tenn. R. App. P. 3; Judgments of the Trial Court Affirmed

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Susan Shipley, Knoxville, Tennessee, for the appellant, Hamadi G. Haley.

Paul G. Summers, Attorney General & Reporter; J. Ross Dyer, Assistant Attorney General; and Marsha Mitchell, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Shortly before 6:00 A.M. on September 26, 1999, the victim, Keith Jackson, was shot and killed as he left Mr. C's Private Party Lounge located at the corner of McCalla Avenue and Spurgeon Street in Knoxville.  After being dispatched to the scene, Knoxville Police Officer Gerald Smith, an evidence technician and former supervisor of the TBI Crime Laboratory, found the body of the victim, who had a shotgun wound to the left side of his head.  A gray Ford Granada automobile, having a temporary tag, was parked near the body of the victim.

Rauf Muhammad, the owner of Kings and Queens Fashions, testified that at approximately 3:00 A.M. on the morning of the murder, he arrived at J.T.'s Lounge, only a short distance from Mr. C's Private Party Lounge.  While there, he observed the defendant and Carlos Emmanuel Mahone "hanging around" with several other men outside the club.  Although Muhammad had not seen the two men before, he was able to identify them at their joint trial.  While Muhammad was present

when the victim was shot, he could not say who fired the shot. He recalled that after the shooting, several of the men ran toward a housing project, which was nearby, and another got into a car and sped away. Muhammad remembered that a man named Derrick Perry, whom he knew as D.P., and a second individual ran to the front of the Lounge after the shooting. Muhammad heard the second individual say, "Somebody please call the police," explaining that he had been robbed and his friend had been shot. Later, Muhammad learned that the individual was Alando Murphy, a Jamaican. Muhammad observed Murphy confront Perry, saying, "You know what happened; you were there; you all killed . . . ."

Michael Taylor testified that he saw the defendant, with whom he was acquainted, and Mahone "hanging out" at J.T.'s Pool Hall on the morning of the murder. He testified that Perry, John Foxx, and Chase Jackson, were also at the scene. Taylor, who acknowledged that he had a pistol in his possession at the time of the shooting, stated that he did not fire his pistol, that he did not see the robbery, and that he did not see who killed the victim. Taylor acknowledged that he was arrested as he fled from the scene. He recalled informing police that the defendant and Mahone, the "two people from Alcoa," were at the crime scene on the morning of the murder.

Alando Murphy testified that he owned the Ford Granada found at the scene. He recalled that he and the victim were celebrating his birthday and were about to get into his car to leave when they were confronted by "six guys," all of whom were armed and who directed them to lie down. Murphy testified that he squatted on the driver's side of the vehicle as four or five of the assailants surrounded the victim. Murphy remembered that the defendant possessed a shotgun and recalled that the defendant instructed Mahone "to hold a gun to [Murphy's] head," and to "pull the trigger" if Murphy moved. He stated that the defendant searched his car and that the defendant and Chase Jackson searched his pockets. Jackson, Murphy recalled, "snatched my earring off my ear." The men took his earring, his pager, his car keys, and $50 to $60 from his pocket. Murphy testified that he begged the men to spare the victim's life and was beaten by Jackson, Mahone, and Foxx. He recalled that the men went through the victim's pockets and took his chain, his jewelry, and a ring. When the victim asked to keep his wedding ring, the defendant said, "You ain't married no more," and took it. At that point, one of the men said, "Take his shoes off." When the victim answered, "You got everything else, man, I ain't gonna take my shoes off," Murphy heard a gun "blast, boom" and saw the victim fall to the ground. The defendant and Mahone then ran from the scene. Murphy made a positive identification of both the defendant and Mahone, explaining, "I'll never forget these guys['] faces." Murphy recalled that Derrick Perry was at the scene, "just watching." On cross-examination, Murphy admitted that he had previously participated in the attempted aggravated robbery of a couple in Springfield, Tennessee, and acknowledged that he had served a term in prison for theft of more than $60,000.00 as a result. Murphy also admitted that he had violated terms of his parole by smoking marijuana.

An autopsy established that the victim died of a gunshot wound to the left side of the head near the ear. There was an abrasion to the upper left chest of the victim, above the collarbone. The victim had a blood alcohol level of .21 and tested positive for sertraline, a generic name of Zoloft, an anti-depressant.

## I

Initially, the defendant claims that Detective Joseph Huckleby obstructed justice by intimidating a potential defense witness, Deon McKinley Turner. The defendant argues that he should be granted a new trial due to police harassment of Turner.

Both before and after the trial, Turner had claimed that Derrick Perry, who was present at the time of the crime, had fired the fatal shot. Turner had informed defense counsel that he would not testify at trial, however, explaining that he feared Officer Joseph Huckleby. Later, he explained that he was unwilling to testify at trial because he was afraid of having his probation violated. At the conclusion of the hearing on the motion for new trial, the trial court ruled that the defendant had failed to demonstrate that police were to blame for Turner's failure to testify:

> [Turner] recalled being afraid but just afraid period and that he was not specifically afraid of Officer Huckleby or by reprisals by the police department. He testified that he got a subpoena to come to the hearing when it had been previously set, but he didn't come because of a pending violation of probation and that he didn't want to get himself into trouble and that he was intoxicated anyway.

The evidence does not preponderate against the findings of the trial court. At the hearing on the motion for new trial, Turner confirmed that Officer Huckleby had done nothing other than encourage him to tell the truth if called to testify. In our view, the defendant has been unable to establish that Turner refused to testify because of police intimidation.

## II

In a related issue, the defendant claims that the trial court erred by refusing to grant a new trial based upon newly discovered evidence. One week after the trial, Turner contacted defense counsel and claimed that he had seen Derrick Perry shoot the victim during the robbery. He informed defense counsel that the defendant was not in the parking lot when the shooting occurred and executed an affidavit which was filed in support of the motion for new trial:

1. That I was present on the early morning of September 26, 1999, at the corner of McCalla Avenue and Spurgeon Street. That I witnessed a murder of Keith Jackson. That I saw Derrick Perry shoot Mr. Jackson in the head with a shotgun.

2. That I provided a statement to this effect to Detective Gary Jones with the Knoxville Police Department on October 6, 1999.

3. That Susan E. Shipley, an attorney for Hamadi G. Haley, interviewed me at my home on December 20, 2000. That I falsely told Ms. Shipley that I did not see the person who shot Mr. Jackson. That I did not tell Ms. Shipley the truth when she interviewed me because I was afraid of reprisals and because I had been threatened. That I also told Ms. Shipley that I would not testify if she called me as a witness to the stand.

4.      That I informed Ms. Shipley in a telephone call I made on January 18, 2001, that I did indeed witness the murder of Keith Jackson, and that he was shot and killed by Derrick Perry. I also told her for the first time that I was positive that Hamadi Haley was not present in the parking lot when the shooting occurred. I also told her that I do not know an individual named Carlos Mahone.

To warrant a new trial on the basis of newly discovered evidence, the defendant must show that (1) he used reasonable diligence to discover the information prior to trial; (2) the evidence is material; and (3) the evidence is likely to have changed the result. State v. Singleton, 853 S.W.2d 490, 496 (Tenn. 1993); State v. Goswick, 656 S.W.2d 355, 359 (Tenn. 1983). Generally, a new trial will not be granted when the newly discovered evidence would have no effect other than to impeach the testimony of a witness. See State v. Sheffield, 676 S.W.2d 542, 554 (Tenn. 1984); State v. Burns, 777 S.W.2d 355, 361 (Tenn. Crim. App. 1989). When the trial court has denied a motion for new trial based upon newly discovered evidence, that decision may not be disturbed on appeal unless there is an abuse of discretion. State v. O'Guin, 641 S.W.2d 894, 898 (Tenn. Crim. App. 1982).

In the motion for new trial, defense counsel acknowledged that she had interviewed Turner prior to trial. Notwithstanding his earlier statement to police that he had witnessed Derrick Perry commit the crime, Turner informed defense counsel at that time that he did not actually see what occurred and that he feared retribution if called to testify at trial. After the trial, Turner signed the affidavit in support of the motion for new trial. When called as a witness at the ensuing hearing, Turner testified that he had known the defendant since the age of 13. He stated that he had never seen Mahone prior to the date of the hearing. Turner, who had been convicted of joyriding and was on probation at the time of the murder, acknowledged that he had made a statement to police in 1999, less than two weeks after the shooting. While claiming he was "real drunk" at the time of the statement, Turner testified that he could not remember what happened very well. He also recalled that later, while incarcerated for a probation violation, he told defense counsel that Derrick Perry had shot the victim. Turner answered in the negative when asked by the state whether Detective Joseph Huckleby had done anything improper during the course of his investigation. He explained that he had failed to respond to an earlier subpoena partly because he was not certain of his statements about the murder. He also stated that Detective Huckleby had talked to him just prior to his testimony and encouraged him to be truthful, warning that perjury was a punishable offense. Turner claimed that he was frightened of Detective Huckleby, but only because "he could put me in jail." Turner confirmed that he had informed defense counsel shortly after the trial that Perry had committed the homicide and that the defendant was not present at the time of the shooting. Claiming he had been harassed by the police, Turner nevertheless emphasized that he was drunk at the time of the shooting, implying that his recollections were obscured. He stated that he believed that the killing was the result of a dispute over marijuana and that Perry and John Foxx left the scene with the marijuana. Upon further questioning, however, Turner testified that he was "messed up" during the interview by defense counsel, having smoked some joints. He conceded that the course of events on the night of the shooting "just happened too fast for me." He ultimately testified that his claim that Perry had shot the victim was based on hearsay. Turner recalled that he asked someone, "Man,

what happened?" He then heard that person answer, "D.P. just shot dude." Turner finally conceded, "That's how I got all that information. . . . I just didn't see really who did it."

At the conclusion of the hearing, the trial court overruled the motion for new trial. After determining that both the state and the defense were aware prior to trial that Turner had identified Perry as the shooter but had refused to testify, the trial court ruled that "Turner was simply less than believable." After observing that he had changed his testimony during the course of the hearing on the motion for new trial, the trial court concluded that while defense counsel had been diligent and the testimony offered through Turner would have been material, his recollections were so contradictory that his testimony was unlikely to change the result of the trial.

In the light most favorable to the defense, the essence of Turner's statement was that he was drunk at the time of the offense and that, while he believed that Perry had committed the crime, his belief was based upon a statement of someone he could not identify. He ultimately acknowledged that he did not see who shot the victim. Turner was in jail on other charges at the time he appeared in court. It is our view that his answers to questions about the crime depended largely upon whether the questions were asked by the state or by the defense. In summary, the evidence does not preponderate against the trial court's finding that Turner's testimony was wholly lacking in consistency and credibility and would not have affected the results of the trial.

Accordingly, the judgments are affirmed.

_____
GARY R. WADE, PRESIDING JUDGE