# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

## AUGUST 1997 SESSION

FILED

November 20, 1997

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | NO. 01C01-9607-CR-00285 |
| Appellee, | ) | |
| | ) | DAVIDSON COUNTY |
| VS. | ) | |
| | ) | HON. J. RANDALL WYATT, JR., |
| DAVID PALMER, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Aggravated Child Abuse) |

**FOR THE APPELLANT:**

KARL DEAN
Public Defender

JEFFREY A. DeVASHER (appeal only)
Senior Assistant Public Defender
1202 Stahlman Building
Nashville, TN 37201

WENDY S. TUCKER
SHEILA JONES
Assistant Public Defenders
1202 Stahlman Building
Nashville, TN 37201

**FOR THE APPELLEE:**

JOHN KNOX WALKUP
Attorney General and Reporter

KAREN M. YACUZZO
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

VICTOR S. JOHNSON, III
District Attorney General

WILLIAM R. REED
Assistant District Attorney General
Washington Square, Suite 500
222 Second Avenue, N.
Nashville, TN 37201-1649

**OPINION FILED:** _____

**AFFIRMED**

**JOE G. RILEY,
JUDGE**

## OPINION

The defendant, David Palmer, was convicted by a Davidson County jury of aggravated child abuse. He was sentenced as a Class A felon to seventeen (17) years as a Standard Offender in the Tennessee Department of Correction. On appeal, he presents ten (10) issues for our review:

(1) whether the trial court erred in denying his motion to suppress a statement made to his probation officer without <u>Miranda</u> warnings;

(2) whether the trial court erred in denying his motion to exclude the testimony of his probation officer in its entirety;

(3) whether the trial court erred in admitting certain photographs;

(4) whether the trial court erred in allowing the opinion of a plastic surgeon regarding the non-accidental nature of the child's injury;

(5) whether the evidence is sufficient to support the finding of guilt;

(6) whether the trial court erred in refusing to instruct the jury on identification of the defendant pursuant to <u>State v. Dyle</u>;

(7) whether the trial court erred in instructing the jury on the minimum number of years defendant would serve before becoming eligible for parole;

(8) whether defendant was entitled to a new trial on the basis of newly discovered evidence;

(9) whether the trial court erred in sentencing the defendant for a Class A felony when the indictment did not allege that the child was under six (6) years of age; and

(10) whether the indictment was fatally deficient for failing to allege the requisite *mens rea*.

After a thorough review of the record, we affirm the judgment of the trial court.

## FACTS

On the evening of December 4, 1994, defendant and his girlfriend, Shiwanda Bonds, brought Bonds' fifteen-month old daughter to Centennial Medical Center in Nashville. The child had a severe "submersion" burn on her right hand. Because of the severity of the burn, the child was subsequently taken to the burn center at Vanderbilt University Hospital.

Upon arriving at Centennial, Detective Duane Phillips spoke with defendant. Defendant stated he and Bonds had been dating for over two (2) years but did not live together. Defendant claimed that he was not present when the child was hurt but helped bring the child to the hospital at Bonds' request.

Defendant also spoke that evening with Ron Reed, a case worker with the Emergency Child Protective Services Division of the Department of Human Services. Reed was contacted because of suspicions that the child's injury was the result of abuse. Likewise, defendant told Reed that he was not with the child when she was burned.

Bonds, the child's mother, explained to the doctors at Vanderbilt that the child was burned on a hot curling iron.

Approximately two to three days later, defendant telephoned Reed to discuss the incident. Reed testified at trial that "[defendant] told me that he did it, but that he didn't mean to."

Subsequently, defendant spoke with Tina Fox[1] concerning the incident. Defendant told her that he accidentally burned his girlfriend's daughter's hand in some hot water.

Dr. Ronald Barton, a plastic surgeon at Vanderbilt, testified that the child had a "significant burn to her right hand, in essentially the distribution of a glove." Dr. Barton stated that the burn was consistent with the child's hand being dipped in a pot of hot water. He opined that the injury was compatible with physical abuse rather than being accidental.

Defendant did not present any proof.

The jury returned a verdict of guilty of aggravated child abuse. Defendant was sentenced as a Range I, Standard Offender, to seventeen (17) years for this Class A felony.[2] From this conviction and sentence, he brings this appeal.

_____

[1] At this time, Fox was defendant's probation officer on prior convictions for vandalism and statutory rape. However, the fact that Fox was defendant's probation officer was not disclosed to the jury. Their conversation will be discussed more fully under Motion to Suppress and Motion to Exclude, *infra*.

[2] Bonds pled guilty to facilitation to commit aggravated child abuse.

## MOTION TO SUPPRESS

Defendant contends that the trial court erred in denying his motion to suppress a statement made to his probation officer prior to his arrest. He claims that before the statement was given, he was not advised of his constitutional rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Therefore, he argues that the statement was improperly admitted at trial.

### A.

Defendant telephoned his probation officer, Tina Fox, prior to his arrest. He told Fox that he was afraid that there was an outstanding warrant for his arrest in connection with this incident. Fox asked him to come to her office, and defendant agreed.

Before defendant arrived at her office, Fox called the Metro Police Department to determine if there was an outstanding warrant for defendant's arrest. A detective confirmed that defendant had an outstanding warrant and asked Fox to call when defendant arrived.

At Fox's office, defendant told her that he had accidentally burned his girlfriend's daughter's hand in some hot water. After a short conversation with Fox, defendant was arrested by Metro Police officers at Fox's office.

The defendant sought to suppress the statement made to Fox that he accidentally burned his girlfriend's child's hand in hot water. The trial court found that the interview with Fox did not "become custodial." Therefore, the trial court denied defendant's motion to suppress the statement.

### B.

In Miranda v. Arizona, the United States Supreme Court held that the prosecution cannot admit a statement by the defendant stemming from "custodial interrogation" unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. 384 U.S. at 444, 86 S.Ct. at 1612. The Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise

4

deprived of his freedom of action in any significant way." Id. Thus, because Miranda is only implicated when the defendant is questioned while in the coercive environment associated with being in police custody, our initial inquiry is whether defendant was subjected to "custodial interrogation." In a subsequent case, the U.S. Supreme Court found that a defendant was not "in custody" within the meaning of Miranda when he made incriminating statements during a meeting with his probation officer. Minnesota v. Murphy, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 406 (1984).

Recently, our Supreme Court developed the test in Tennessee for determining whether an individual is "in custody" as contemplated by Miranda. State v. Anderson, 937 S.W.2d 851 (Tenn. 1996). We must determine whether, "under the totality of the circumstances, a reasonable person in the suspect's position would consider himself or herself deprived of freedom of movement to a degree associated with formal arrest." Id. at 855. Some factors relevant in that determination include:

> the time and location of the interrogation; the duration and character of the questioning; the officer's tone of voice and general demeanor; the suspect's method of transportation to the place of questioning; the number of police officers present; any limitation on movement or other form of restraint imposed on the suspect during the interrogation; any interactions between the officer and the suspect, including the words spoken by the officer to the suspect, and the suspect's verbal or nonverbal responses; the extent to which the suspect is confronted with the law enforcement officer's suspicions of guilt or evidence of guilt; and finally, the extent to which the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will.

Id.

## C.

In the case *sub judice*, defendant initiated contact with Fox by telephone. Fox asked him to come to her office, and he agreed. At the suppression hearing, Fox testified that defendant was free to leave at any time during their discussion. She admitted that she would have attempted to talk him out of leaving but could not have stopped him if he wanted to leave her office. Moreover, the nature of their conversation was not coercive and lasted only five minutes. No law enforcement officials were present during their discussion. Furthermore, there is no indication

in the record that Fox's demeanor was intimidating or threatening during the meeting.

We find that the defendant was not in custody when he told Fox that he accidentally burned his girlfriend's child's hand in hot water. Because Miranda only applies in instances of custodial interrogation, Fox was not required to advise defendant of his constitutional rights. As a result, the statement was properly admitted. This issue is without merit.

## MOTION TO EXCLUDE

In a pre-trial motion defendant sought to prohibit testimony by Tina Fox since defendant's probationary status would be revealed to the jury. In a written order, the trial court denied defendant's motion to exclude the testimony of Fox; however, the court agreed to limit her testimony out of concern for the prejudicial effect of defendant's probation status coming before the jury. She was not allowed to bring in any files or to tell the jury what her occupation was. She was merely allowed to testify that defendant had admitted to her that he accidentally burned his girlfriend's daughter's hand. Her trial testimony was extremely brief.

Defendant now claims that he was unable to fully cross-examine Fox as to possible prejudice or bias for fear of "opening the door" to testimony concerning his probationary status. Consequently, he maintains that he was "forced" to relinquish his constitutional right to fully confront an adverse witness.

The propriety, scope, manner and control of the examination of witnesses is a matter within the discretion of the trial judge and will not be disturbed in the absence of an abuse of that discretion. State v. Dishman, 915 S.W.2d 458, 463 (Tenn. Crim. App. 1995); State v. Meeks, 876 S.W.2d 121, 128 (Tenn. Crim. App. 1993). In this instance, the trial court recognized that the mention of Fox's official status as a probation officer could have been prejudicial to the defendant. In balancing the state's need to introduce defendant's admission against the possible prejudice to the defendant, the trial court did not abuse its discretion in limiting the

testimony of Fox. *See, e.g.,* State v. Hutchison, 898 S.W.2d 161, 172 (Tenn. 1994); State v. Williams, 929 S.W.2d 385, 389 (Tenn. Crim. App. 1996).

Defendant's contention that he was denied the right to fully cross-examine the witness is not supported by the record. Contrary to defendant's position, the trial court did nothing to limit defendant's cross-examination of Fox. Rather, her testimony on direct was restricted to prevent the jury from hearing that defendant was on probation at the time he made his statement. Defendant was not restrained by the trial court from inquiring into possible prejudice or bias of the witness.

Furthermore, defendant failed to make an offer of proof as to what the probative cross-examination would have been. Without such an offer of proof, this Court is left to speculate how defendant was prejudiced. *See* Tenn. R. Evid. 103(a)(2). This issue is without merit.

## PHOTOGRAPHS

In his third issue, defendant asserts that the trial court erred in allowing the state to present photographs of the victim's hand taken seven months after the injury. First of all, he claims that the photographs were irrelevant to any issue at trial. Secondly, he argues that even if the pictures were relevant, their probative value was outweighed by the prejudicial effect. Therefore, he contends that the photographs were improperly admitted.

The trial court found that some of the photographs taken by Dr. Barton were "highly inflammatory" and excluded those photographs on the basis that their prejudicial effect outweighed any probative value. However, the court found that three photographs were relevant to the issue of serious bodily injury. Furthermore, the court found that their probative value was not outweighed by any prejudicial effect.

The admissibility of photographs lies within the discretion of the trial court whose ruling in this respect will not be overturned on appeal except upon a clear showing of an abuse of discretion. State v. Banks, 564 S.W.2d 947, 949 (Tenn.

7

1978); *see also* State v. Stephenson, 878 S.W.2d 530, 542 (Tenn. 1994); State v. Bordis, 905 S.W.2d 214, 226 (Tenn. Crim. App. 1995). However, before a photograph may be admitted into evidence, it must be relevant to an issue at trial and its probative value must outweigh any prejudicial effect that it may have upon the trier of fact. State v. Braden, 867 S.W.2d 750, 758 (Tenn. Crim. App. 1993).

Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. For the offense of aggravated child abuse, the state was required to show that the victim suffered "serious bodily injury." *See* Tenn. Code Ann. § 39-15-402(a)(1). Photographs are relevant to prove the extent of injuries. State v. Norris, 874 S.W.2d 590, 597 (Tenn. Crim. App. 1993). Although the photographs were taken some time after the injury was sustained, the trial court did not abuse its discretion in finding that they were relevant to prove the element of "serious bodily injury."

Furthermore, the photographs were not inflammatory. The probative value of the photographs outweighed any prejudicial effect they might have. This issue is without merit.

## DOCTOR'S TESTIMONY

In his next issue, the defendant maintains that the trial court erred in allowing Dr. Barton to testify that, in his opinion, the nature of the child's injury was non-accidental. He claims that the doctor was not properly qualified as an expert witness on this issue. Additionally, he argues that the doctor's testimony constituted an improper comment on defendant's credibility.

### A.

During the direct examination of the doctor, the Assistant District Attorney General asked if "the injury that [he] observed [was] compatible with a - - a history of physical abuse?" The doctor replied, "[y]es." The defendant did not object. Subsequently, the following exchange took place:

8

Q        Doctor, do you have an opinion within a reasonable degree of medical certainty as to whether or not with the type of injury, the type of burn that you saw and examined in this case was consistent with an accident or with someone deliberately burning this child's hand?

MS. TUCKER:  Your Honor, at this point, I think I'm going to have to object.  I don't believe there's been any foundation for this doctor to rule out any possible accident that could have happened.  I don't think he's an expert in accidents.  I think that he can testify that it's consistent with child abuse.  And - - and I think that's where his expertise ends, as far as whether it was an accident or not.

THE COURT:        . . .

I think you might need to rephrase that question. I - - I think the Doctor can testify about what would cause this or what - - what degree of hot water would - - what it - - what it would take to do this, but I don't know if he can absolutely rule out an accident.  I don't - - I don't know that either.  So maybe rephrase the question and let him testify as to how he would expect something like this to have occurred.

. . . .

Q        Is it compatible with - - with a burn from a curling iron?

A        No.

Q        And is it compatible with being dipped in a pot of hot water?

A        Yes.

Q        Is there anything that you observed in your diagnosis and treatment and observation of the child that is consistent with a child accidentally sticking her hand in a pot of hot water?

MS. TUCKER:  Your Honor, I think that - - that's the same question, just rephrasing.  That - -

THE COURT:  He - - he can - - he can answer that and then give his reasons.  This is an opinion.  And I'll give you instructions at the end of the trial as to how you are to look at that, but I do think he's qualified, having treated burns, having a specialty with burns to - - to give an opinion on that.  So that will be overruled.

Go ahead, please.

THE WITNESS:  I think this being an accident is very, very unlikely . . .

**B.**

9

"If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." Tenn. R. Evid. 702. The qualification, admissibility, relevancy and competency of expert testimony are matters that rest within the sound discretion of the trial court. State v. Ballard, 855 S.W.2d 557, 562 (Tenn. 1993). A trial court's decision with regard to expert testimony will not be disturbed on appeal unless there was an abuse of discretion which was prejudicial. State v. Tizard, 897 S.W.2d 732, 748 (Tenn. Crim. App. 1994).

Dr. Barton testified that he was board certified in general surgery and plastic surgery. In his duties at Vanderbilt Hospital he is involved in research with burns and hand injuries. He belongs to the American Burn Association and the American Society for Surgery of the Hand, among others. The trial court did not abuse its discretion in allowing the doctor to testify as to the nature of the child's injury. *See* State v. Caughron, 855 S.W.2d 526, 537 (Tenn. 1993).

Moreover, the doctor testified without objection that the child's burn was consistent with physical abuse and compatible with her hand being dipped in a pot of hot water. Any error is harmless, at best. Tenn. R. Crim. P. 52(a). This issue is without merit.


### SUFFICIENCY OF THE EVIDENCE


In his fifth assignment of error, the defendant challenges the sufficiency of the convicting evidence. Specifically, he claims that the record "contains no evidence, direct or circumstantial, that he caused or inflicted these injuries, other than his own uncorroborated statements." He further asserts that there is no evidence in the record that he acted "knowingly." As a result, he contends that there is insufficient evidence to sustain the finding of guilt of aggravated child

abuse.

**A.**

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn.1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App.1995).

This court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the defendant demonstrates that the facts contained in the record and the inferences which may be drawn therefrom are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). Accordingly, it is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789, 61 L. Ed.2d 560 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994).

**B.**

Defendant maintains that the state did not sufficiently corroborate his statements to Reed and Fox that he "accidentally" burned the child's hand. The *corpus delicti* of a crime may not be established by a confession alone. Ashby v. State, 124 Tenn. 684, 139 S.W. 872 (1911). The *corpus delicti* of a crime requires that the state prove two elements: (1) that a certain result has been produced, and (2) that the result was created through criminal agency. State v. Ervin, 731 S.W.2d 70, 71-72 (Tenn. Crim. App. 1986). The elements of *corpus delicti* may be established by circumstantial evidence. Id. at 72. Furthermore, the question of

11

whether the state has sufficiently proven the *corpus delicti* is a question for the jury. Id. at 71.

In the case *sub judice*, the defendant admitted to two people that he "accidentally" burned the victim's hand. The doctor's testimony, combined with other trial testimony, establishes the *corpus delicti*; that the child was burned other than by accidental means. "Only <u>slight</u> evidence of the *corpus delicti* is necessary to corroborate a confession and thus sustain a conviction." <u>Ervin</u>, 731 S.W.2d at 72 (emphasis added). Defendant's corroboration argument is without merit.

## C.

Additionally, a reasonable trier of fact could conclude that defendant acted "knowingly" when he burned the child's hand. *See* Tenn. Code Ann. §§ 39-15-401(a), 39-15-402. Although defendant's statements claim that the child's injury was accidental, the jury was free to disregard that version. The medical testimony justified them doing so. A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. <u>State v. Bigbee</u>, 885 S.W.2d 797, 803 (Tenn. 1994); <u>State v. Harris</u>, 839 S.W.2d 54, 75 (Tenn. 1992). The evidence is sufficient to support a finding of guilt beyond a reasonable doubt of aggravated child abuse. This issue is without merit.

## IDENTIFICATION JURY INSTRUCTION

The defendant alleges that the trial court erred in refusing to charge the jury on identification pursuant to <u>State v. Dyle</u>, 899 S.W.2d 607 (Tenn. 1995). He claims that he put his identity at issue during trial, and the trial court's refusal to give this instruction amounted to error.[3]

In <u>State v. Dyle</u>, our Supreme Court devised a jury instruction on eyewitness identification of the defendant. 899 S.W.2d at 612. The court noted the inherent

---

[3] Although the trial court refused the defendant's requested instruction, the jury was given the abbreviated pattern charge on identity. *See* T.P.I. Crim. 37.17 (2d ed. 1988).

"fallibilities" of eyewitness identification and the need for a particularized instruction to help protect defendants against such problems. Id.

While defendant is correct in his assertion that failure to give the instruction when eyewitness identification is a material issue would be error, the state presented no eyewitness testimony. Indeed, by defendant's own statement he admitted that he burned the child.

The Dyle instruction was developed to protect against the problems incurred with eyewitness identification. The Dyle instruction lists certain factors for the jury to consider. All of these factors concern the circumstances surrounding an eyewitness identification. The Dyle instruction is inapplicable here and would have been confusing to the jury. This issue is without merit.

## RANGE OF PUNISHMENT JURY INSTRUCTION

In defendant's seventh issue, he contends that the trial court erred in instructing the jury on the minimum number of years the defendant would serve before becoming eligible for parole. He claims that Tenn. Code Ann. § 40-35-201(b), which requires that parole eligibility be charged in conjunction with a range of penalties charge, is unconstitutionally vague, violates due process, deprives a defendant of a fair and impartial jury and constitutes an unconstitutional attempt by the legislature to exercise judicial powers.

This Court has previously rejected similar challenges to the constitutionality of Tenn. Code Ann. § 40-35-201(b). State v. Curtis Lee Majors, C.C.A. No. 01C01-9602-CR-00076 (Tenn. Crim. App. filed July 30, 1997, at Nashville); State v. Howard E. King, C.C.A. No. 02C01-9601-CR-00032 (Tenn. Crim. App. filed October 22, 1996, at Jackson), *perm. to appeal granted* (Tenn. March 10, 1997). In State v. King, this Court found that Farris v. State, 535 S.W.2d 608 (Tenn. 1976), cited by the defendant in the present case, is inapplicable. In Farris, our Supreme Court struck as unconstitutional a statute which required that juries be charged on parole eligibility, good behavior allowances and honor time allowances. Id. at 614.

13

However, because <u>Farris</u> was decided at a time when sentencing was primarily a jury function, this Court held that it had no applicability under the current sentencing laws. <u>State v. King</u>, *supra*.

Furthermore, this Court held that Tenn. Code Ann. § 40-35-201(b) is not impermissibly vague since the jury is provided with an estimated figure "with the caveat that the actual time served may vary." <u>State v. Majors</u>, No. 01C01-9602-CR-00076, slip op. at 14. Due to the necessary overlapping of the branches of state government, the Court also found that the statute did not violate separation of powers. Moreover, the Court determined that the statute did not deprive an accused of due process or a fair and impartial jury.

We see no reason to deviate from the holdings in these previous cases. This issue is without merit.

## NEWLY DISCOVERED EVIDENCE

In his next assignment of error, defendant contends that the trial court erred in denying his motion for new trial on the basis of newly discovered evidence. In preparation for sentencing, the state obtained a copy of the defendant's juvenile record.[4] Attached to his record were reports from mental evaluations administered while defendant was a patient at Crockett Academy. Defense counsel then sought to obtain further records on defendant's mental health.

Defense counsel claimed that she originally had suspicions concerning defendant's mental health. However, defendant denied that he had undergone any psychological testing. He also denied having a juvenile record. Therefore, defense counsel did not pursue this any further.

The reports[5] revealed that defendant had a "borderline" intelligence quotient.

---

[4] Defendant does not allege that the state failed to divulge exculpatory evidence. It appears from the record that the state obtained these reports after the trial had concluded.

[5] In addition to evaluations at Crockett Academy, the defendant was psychologically evaluated at Parthenon Pavillion and Vanderbilt University, all of which are Nashville institutions. All of the mental evaluations were administered when defendant was a juvenile.

14

His I.Q. was in the fifth national percentile for his age group. A cognitive assessment indicated that he was functioning at a low level. His linguistic level was determined to be in the "very poor" range for his age group. He was described as a "somewhat intellectually and socially limited youngster." He was also characterized as having a need to please others, feelings of inadequacy and low self-esteem. Defendant contends that these reports are material in that they might negate the prosecution's theory at trial, i.e., that the injury was not accidental.

In seeking a new trial based on newly discovered evidence, there must be a showing that defendant and his counsel exercised reasonable diligence in attempting to discover the evidence. State v. Nichols, 877 S.W.2d 722, 737 (Tenn. 1994); State v. Singleton, 853 S.W.2d 490, 496 (Tenn. 1993). In addition, there must also be a showing of the materiality of the testimony, and the trial court must determine whether the result of the trial would likely be changed if the evidence were produced. Nichols, 877 S.W.2d at 737; Singleton, 853 S.W.2d at 496. The granting or refusal of a new trial on the basis of newly discovered evidence rests within the sound discretion of the trial court. State v. Walker, 910 S.W.2d 381, 395 (Tenn. 1995); State v. Goswick, 656 S.W.2d 355, 358 (Tenn. 1983).

The trial court denied defendant's motion for new trial on the basis that the records did not constitute newly discovered evidence in that the defendant had knowledge of the records prior to trial. Jones v. State, 452 S.W.2d 365 (Tenn. Crim. App. 1970).

We find that the trial court did not abuse its discretion in denying the motion for new trial based upon newly discovered evidence. As the trial court correctly points out, defendant had knowledge that the records existed prior to trial. Defendant was untruthful with his counsel regarding prior evaluations. He is entitled to no relief on this issue.

Additionally, we find that the evidence was not material and would not have changed the result of the trial. Although the records reveal that defendant had various problems, we find none that would absolve him of the offense. In fact, the reports also indicate that defendant exhibits bad judgment, a tendency to act

15

without thinking and "some lack of control from time to time over his temper."

We are not convinced that the evidence was material or would have changed the result of the trial. Furthermore, the reports are not "newly discovered" as the defendant had knowledge that they existed prior to trial. This issue is without merit.

## SUFFICIENCY OF THE INDICTMENT

In his final two issues, the defendant challenges the sufficiency of the indictment in two respects. Firstly, he maintains that he was improperly sentenced to a Class A felony because the indictment did not specifically allege that the victim was under six (6) years of age. Secondly, he asserts that the indictment was fatally deficient for failing to allege the requisite *mens rea* for the charged offense. Because these issues overlap in some ways, we will consolidate them for review.

The indictment alleged that:

[Defendant] on the 4th day of December, 1994, . . . did treat [victim] (D.O.B. September 6, 1993), a child under eighteen (18) years of age in such a manner as to inflict injury, and the act of abuse resulted in serious bodily injury to the child, in violation of Tennessee Code Annotated § 39-15-402, and against the peace and dignity of the State of Tennessee.

No pre-trial objection was made as to the sufficiency of the indictment.

An indictment must "state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended." Tenn. Code Ann. § 40-13-202. "To satisfy our constitutional notice requirements, an indictment . . . must provide notice of the offense charged, an adequate basis for the entry of a proper judgment, and suitable protection against double jeopardy." State v. Trusty, 919 S.W.2d 305, 309 (Tenn. 1996); *see also* State v. Tate, 912 S.W.2d 785, 789 (Tenn. Crim. App. 1995). "As a general rule, it is sufficient to state the offense charged in the words of the statute, or words which are equivalent to the words contained in the statute." State v. Tate, 912 S.W.2d at 789 (citations omitted). An indictment which fails to allege the elements of the offense in the terms of the statute will still be sufficient "if the elements are necessarily implied from the

16

[factual] allegations made." State v. Marshall, 870 S.W.2d 532, 538 (Tenn. Crim. App. 1993)(citing Hagner v. United States, 285 U.S. 427, 430, 52 S.Ct. 417, 419, 76 L.Ed. 861 (1932)).

### A. Failure to Allege Victim's Age

Defendant first contends that the indictment did not sufficiently state the child's age, and as a result, he was improperly sentenced for a Class A felony. Aggravated child abuse is a Class B felony; however, "if the abused child is six (6) years of age or less, the penalty is a Class A felony." Tenn. Code Ann. § 39-15-402(b).

The indictment specifically alleged that the offense was committed on December 4, 1994, and the victim was born on September 6, 1993. The child's age of approximately fifteen months is "necessarily implied" since the indictment alleges both the date of the offense and the date of the child's birth. *See* State v. Marshall, 870 S.W.2d at 538.

Defendant's reliance on State v. Hilliard, 906 S.W.2d 466 (Tenn. Crim. App. 1995), is misplaced. In Hilliard the indictment alleged the defendant unlawfully possessed cocaine with the intent to sell or deliver. It did not make any reference whatever to the amount being over 0.5 grams or more which elevates the offense from a Class C felony to a Class B felony. This Court held that the indictment only charged a Class C felony in the absence of an allegation as to the amount of cocaine. 906 S.W.2d at 470.

In the case *sub judice*, the indictment itself put the defendant on notice of the age of the child. Accordingly, Hilliard is distinguishable.

Moreover, the fact that defendant was to be sentenced for a Class A felony was not unanticipated. All parties understood that the offense was a Class A felony before the court charged the jury. Additionally, the jury was instructed with the range of punishment for a Class A felony. No objections were made. The issue was first raised after the conclusion of the trial and prior to sentencing. This issue

17

is without merit.[6]

## B. Failure to Allege *Mens Rea*

Defendant finally contends that the indictment is insufficient in that it fails to state that he acted "knowingly."  He argues that the *mens rea* is an essential element of the charged offense.  Therefore, because the indictment failed to allege an essential element of the offense, no offense has been charged, and any further proceedings are a nullity.  As previously stated, no pre-trial objection was made relating to the sufficiency of the indictment.

Firstly, we conclude the element of "knowingly" was necessarily implied from the language in the indictment.  *See* State v. Marshall, 870 S.W.2d 532, 538 (Tenn. Crim. App. 1993).  Although the indictment omitted the term "knowingly," it did allege that "the act of abuse resulted in serious bodily injury to the child."  A person of common understanding would certainly conclude that "abuse" to a child implies "knowing" misconduct.[7]

Secondly, we believe this interpretation is consistent with State v. Hill, ___ S.W.2d _____ (Tenn. 1997).  Although Hill concerned a statute which neither expressly required nor plainly dispensed with the requirement for a culpable mental state, we believe its rationale is equally applicable to the case at bar.  This defendant certainly had adequate notice of the charge of aggravated child abuse;

_____

[6] We certainly empathize with the following comments of the trial judge who, when deciding to take this issue under advisement for several days, remarked:

> I want to go ahead and resolve this case today, but I do not want to do it if I'm going to have somebody who has months and months to look over all these things and study them and analyze them and have clerks run around doing things, come along and tell me to conduct this hearing again. . . I'm going to reset this case to complete the Sentencing Hearing.

We agree that the trial court has a much more difficult task in resolving these issues in the "heat of battle" than we do upon deliberate reflection.

[7] Our Court has previously held that the culpable mental state of "intentional" is implied by the use of the term "sexual contact" in the indictment.  Because the definition of "sexual contact" requires that a touching be "intentional," the mental state is thereby contained in the indictment.  *See* State v. John Claude Wells, III, C.C.A. No. 01C01-9505-CR-00146, Davidson County (Tenn. Crim. App. filed June 6, 1997, at Nashville); State v. Milton S. Jones, Jr., C.C.A. No. 02C01-9503-CR-00061, Shelby County (Tenn. Crim. App. filed March 7, 1997, at Jackson).  We find this reasoning to be closely analogous to an indictment containing the term "abuse."

there was an adequate basis for entry of a proper judgment; defendant has full double jeopardy protection; the indictment complied with Tenn. Code Ann. § 40-13-202 in that it stated facts in ordinary and concise language so that a person of common understanding would know the intended charge; and the mental state of "knowingly" could be logically inferred from the use of the word "abuse."

Finally, we note this issue was raised for the first time on appeal. We adopt the concurring opinion of Judge Hayes in State v. Larry Steve Wilson, C.C.A. No. 03C01-9511-CC-00355, Blount County (Tenn. Crim. App. filed March 25, 1997, at Knoxville), and agree that a more liberal rule of construction of indictments is appropriate in the case of late-filed objections. Otherwise, there would be an incentive for a defendant to "sandbag." *See* LaFave and Israel, *Criminal Procedure* § 19.3. In this case the indictment fairly gives notice that "abuse" is charged and necessarily implies it to be "knowingly" inflicted. Furthermore, there has been absolutely no showing of prejudice by the absence of the word "knowingly." The indictment is sufficient.

## CONCLUSION

Based upon the foregoing, we AFFIRM the judgment of the trial court.

_____
**JOE G. RILEY, JUDGE**

**CONCUR:**

_____
**CURWOOD WITT, JUDGE**

_____
**JOE H. WALKER, III, SPECIAL JUDGE**