IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
November 21, 2000 Session

## STATE OF TENNESSEE v. TRACIE KIRKLAND

**Direct Appeal from the Criminal Court for Monroe County**
**No. 98-017    Carroll L. Ross, Judge**

---

**No. E1999-01344-CCA-R3-CD**
**January 9, 2001**

---

Defendant was convicted by a Monroe County jury of first degree premeditated murder and given a life sentence. In this appeal, defendant makes the following allegations of error: (1) the evidence was insufficient to sustain her conviction; (2) the trial court erred in denying a continuance; (3) the trial court improperly charged the jury on criminal responsibility for the conduct of another; and (4) the trial court erred in refusing to grant a new trial based upon newly discovered evidence. Upon our review of the record, we conclude the evidence was not sufficient to support a conviction for first degree premeditated murder, and defendant's sentence should be reduced to second degree murder. The other allegations of error are without merit. Therefore, the judgment of the trial court is modified to reflect a conviction for second degree murder, and the case is remanded to the trial court for a new sentencing hearing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court**
**Modified; Remanded for Re-sentencing**

JOE G. RILEY, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

Steven B. Ward, Madisonville, Tennessee, for the appellant, Tracie Kirkland.

Paul G. Summers, Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; Jerry N. Estes, District Attorney General; and William W. Reedy, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Defendant was convicted by a Monroe County jury of first degree premeditated murder and given a life sentence. In this appeal, defendant alleges: (1) the evidence was insufficient to sustain her conviction; (2) the trial court erred in denying a continuance; (3) the trial court improperly charged the jury on criminal responsibility for the conduct of another; and (4) the trial court erred

in refusing to grant a new trial based upon newly discovered evidence. The judgment of the trial court is modified to reflect a conviction for second degree murder, and the case is remanded to the trial court for a new sentencing hearing.

## FACTS

The victim was employed as a truck driver. In the early morning hours of January 7, 1998, the victim was preparing to pick up a load of cars in Lenoir City, when he encountered the defendant at a local truck stop. According to the defendant's statement to authorities, the victim asked defendant to accompany him to Lenoir City and she agreed.

At approximately 5:32 a.m., the Monroe County Sheriff's Department received a 911 call from the residence of the Mike and Sheila Garrett regarding a shooting. Sheila Garrett is the defendant's sister, and the defendant sometimes stayed at the residence. When officers arrived at the residence, the defendant was not present; however, they found the victim slumped over in the cab of his truck outside the residence. He had been fatally shot in the head. In addition, the victim was shot once in the face and once in the shoulder. High doses of methamphetamine and phentermine were found in the victim's blood. Further medical examination of the victim revealed a collar burn to the right side of his neck and multiple defensive wounds on the right forearm. The defensive wounds were of the type ordinarily "inflicted with a whip or cane or a night stick or a tire iron." The pathologist further testified that the bullets entered the victim from the victim's right, which would be from the passenger side of the vehicle. However, the collar burn was likely caused by force exerted from the left side of the victim, which would be the driver's side of the vehicle. Due to the location of the collar burn and the point of entry of the bullets, the pathologist opined that two persons were likely involved.

Two of the three bullets were recovered from the victim's body, and forensic analysis revealed that the victim was shot with a .32 caliber firearm. However, no weapon was recovered at the scene and, due to the condition of the bullets, it was not possible to match the bullets to any specific weapon.

Later that morning, the distraught defendant appeared at her parents' residence and told her father, "I shot a man. He tried to rape me." Her father carried her to the Monroe County Sheriff's Department. The defendant was given *Miranda* warnings and executed a waiver of her rights. Initially, the defendant told authorities that she agreed to accompany the victim to Lenoir City because he offered her "crank." She further stated that she and the defendant ingested methamphetamine during the entire trip.

Defendant stated that on the way to her sister's residence, the victim began to talk "nasty," tried to choke her, and stated that he was going to rape and kill her. She claimed she tried to get out of the vehicle, but the defendant grabbed her arm and then put his hand under the seat. Defendant stated that she believed the victim was reaching for his gun, so she pulled her gun from her

waistband and shot him. She claimed she then fled the scene on foot and threw the weapon on the side of the road.

Following the initial interview, the defendant was transported to a local hospital for examination. When asked by the emergency room doctor what had transpired, defendant stated, "he [victim] started talking nasty to me. He [victim] wanted me to go to Cleveland and I said, no. You know how men are. They are all pigs. They are all pigs." She reiterated that the victim tried to rape her. The examination revealed that the defendant had not been sexually assaulted, had no appreciable bruising or lacerations, but did have the presence of methamphetamine and phentermine in her system. No gunshot residue testing was done, and no scrapings were taken from the defendant's fingernails.

In a subsequent interview with Agent Jordan of the Tennessee Bureau of Investigation, the defendant stated that the gun she used belonged to Charles Lee. She told Agent Jordan that Lee's girlfriend gave her the gun to trade for drugs. Defendant also changed her previous story and claimed she dropped the weapon in the cab of the truck before fleeing the scene. No guns were found in the cab of the truck.

In her final statement to authorities, defendant claimed that on the night of the murder she gave Charles Lee's 0.32 caliber revolver and holster to Ricky Hooper in exchange for drugs. She claimed that later in the evening she was coming out of the restroom at the truck stop and witnessed Hooper climbing down from the driver's side of the victim's truck. Defendant told them that Hooper had a gun in his hand; however, she was not sure if it was the weapon she had given him in exchange for the drugs. She claimed that Hooper put a gun to her head and told her that, if she did not take the blame for the murder, he would kill her and her children. Additionally, the defendant claimed that the victim and Hooper had a verbal altercation earlier in the evening, but she did not know the reason for the altercation.

Hooper could not be found at the time of trial. By consent, the taped interview of Hooper was played for the jury. Hooper told authorities that the defendant left the truck stop with the victim at approximately 10:00 p.m., and he never saw her again. He further claimed that, thereafter, the victim returned to the truck stop alone. Hooper denied any involvement in the murder.

Defendant was convicted by the jury of first degree premeditated murder and sentenced to life in prison. This appeal followed.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant contends the evidence is insufficient to support a verdict of first degree premeditated murder. Defendant claims the only evidence connecting her to the murder are her own statements to the police, which fail to establish premeditation.

In Tennessee, great weight is given to the result reached by the jury in a criminal trial. A jury verdict accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *Id.*; State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Moreover, a guilty verdict removes the presumption of innocence which the appellant enjoyed at trial and raises a presumption of guilt on appeal. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). The appellant has the burden of overcoming this presumption of guilt. *Id.*

Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Abrams, 935 S.W.2d 399, 401 (Tenn. 1996). The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996).

The applicable definition of first degree murder is "[a] premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(1). Premeditation necessitates "a previously formed design or intent to kill," State v. West, 844 S.W.2d 144, 147 (Tenn. 1992)(citations omitted), and "an act done after the exercise of reflection and judgment . . . [meaning] that the intent to kill must have been formed prior to the act itself." Tenn. Code Ann. § 39-13-202(d). It also requires that the accused be "sufficiently free from excitement and passion as to be capable of premeditation." *Id.*

Although the jury may not engage in speculation, it may infer premeditation from the manner and circumstances of the killing. State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997); State v. Bordis, 905 S.W.2d 214, 222 (Tenn. Crim. App. 1995). Our Supreme Court delineated several circumstances that may be indicative of premeditation, including the use of a deadly weapon upon an unarmed victim, the fact that the killing was particularly cruel, declarations of the intent to kill the victim by the defendant, the making of preparations before the killing for the purpose of concealing the crime, and calmness immediately after the killing. *See* Bland, 958 S.W.2d at 660. We reject the state's argument that premeditation is established based upon defendant's statement that "I pulled my gun out and killed him."

Tennessee law has long recognized that once a homicide has been established, it is presumed to be second degree murder with the state having the burden to elevate the offense to first degree murder. State v. Brown, 836 S.W.2d 530, 543 (Tenn. 1992). Viewing the evidence in the light most favorable to the state, the state failed to present sufficient evidence to elevate the offense to first degree premeditated murder.

-4-

Examining the <u>Bland</u> factors, there was no evidence indicating a previously formed intent to kill after reflection and judgment. Although the defendant admitted to using a deadly weapon to shoot the victim, there was no evidence that the defendant made declarations indicating an intent to kill the victim. The state produced no evidence regarding preparations for the concealment of the murder. Furthermore, the defendant's parents said that the defendant was extremely distraught when she informed them she had shot the victim, and Deputy Kile testified that the defendant appeared "very upset" when she arrived at the Sheriff's Department. The true circumstances surrounding the homicide remain somewhat of a mystery. Viewing the evidence in a light most favorable to the state, the jury could reasonably conclude that the defendant was involved in the homicide; however, the evidence was insufficient to establish that the defendant acted with reflection and judgment.

However, we conclude that the evidence was sufficient to establish the lesser-included offense of second degree murder; namely, that the defendant knowingly killed the victim. *See* Tenn. Code Ann. § 39-13-210(a)(1). Thus, the defendant's conviction is reduced to second degree murder, and the case is remanded to the trial court for re-sentencing.


## II. CONTINUANCE

The defendant contends the trial court erred in denying her motion for a continuance. She claims that shortly before trial, defense counsel learned of two additional potential witnesses. She alleges the two men gave statements to authorities in which they claim to have been with the defendant on the night of the murder. Additionally, defendant alleges the men confirmed that she traded the gun to Ricky Hooper for drugs on the night in question. Defendant further argues the state had a duty to disclose this information to her, and that the state's open file policy does not negate that responsibility. Defendant asserts that, due to the exculpatory nature of the statements, the trial court's refusal to grant a continuance denied her a fair trial.

The day before trial was to begin defendant by oral motion sought a continuance. Defendant argued these two persons had not been located. Defendant further argued these men could provide exculpatory evidence. The trial court denied the motion, but allowed defendant to file a copy of the audio-taped statements as an exhibit to the hearing on the motion. At trial, the state offered to allow the defendant to play the audio-taped statements for the jury, but the defendant declined.

The grant or denial of a motion for continuance is a matter entrusted to the sound discretion of the trial court . <u>State v. Hines</u>, 919 S.W.2d 573, 579 (Tenn. 1995). This court will not interfere with the exercise of this discretion unless it appears that (a) the trial court abused its discretion, and (b) prejudice enured to the accused as a direct result of the trial court's ruling. <u>State v. Cazes</u>, 875 S.W.2d 253, 261 (Tenn. 1994).

The state contends it maintained an open file policy, and the tape recorded statements of the witnesses were available to the defendant long before trial. However, it appears the statements were in the possession of the Sheriff's Department. Although defense counsel earlier obtained certain

photographs from the Sheriff's Department file, it is unclear whether the open file policy extended to the Sheriff's Department file.

Regardless, we are unable to conclude that the defendant was prejudiced. We have reviewed the taped interviews of these two potential witnesses. Our review indicates that one did not know whether the defendant had the gun when she came out of the room after allegedly making the drug deal. However, contrary to the defendant's argument, the other stated he saw her with the gun after she left the room.

Finding no prejudice, we conclude that this issue is without merit.

### III. JURY CHARGE

Defendant contends the trial court erred in instructing the jury on criminal responsibility for the conduct of another. Defendant argues that the only evidence of the involvement of someone other than herself was her statement to police that Ricky Hooper committed the crime without her assistance. Defendant further argues this charge authorized a non-unanimous verdict since some jurors could find the defendant to be the actual perpetrator, whereas others could find that she was criminally responsible for the conduct of another.

A defendant is criminally responsible for the criminal act of another if, "acting with the intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2). According to defendant's last statement, she gave the gun to Hooper, who subsequently committed the crime. Furthermore, the pathologist testified that, due to the nature and location of the wounds, it was likely that more than one person was involved. Based upon this evidence, the trial court properly charged criminal responsibility for the conduct of another.

We also reject defendant's argument that the charge authorized a non-unanimous verdict. "An accused's constitutional right to a jury necessarily entails a right that the jury be unanimous as to which offense constitutes the crime for which defendant is convicted." State v. Williams, 920 S.W.2d 247, 257 (Tenn. Crim. App. 1995). Questions regarding a unanimous jury verdict may arise when the state fails to elect among different offenses; however, criminal responsibility under the Code is not a separate offense, but rather a legal theory of criminal liability by which a defendant may be convicted for an offense based upon the conduct of another person. State v. Lemacks, 996 S.W.2d 166, 170 (Tenn. 1999).

Jury unanimity was not affected by the instruction in the present case. The jury was not required to make findings from among several possible criminal events to determine whether the defendant was guilty of murder. See Lemacks, 996 S.W.2d at 170. The jury was to make one determination of guilt either based upon evidence that the defendant shot the victim herself or that

she was responsible for the conduct of another. Therefore, the trial court properly instructed the jury on both theories of guilt.

This issue is without merit.

## IV. NEWLY DISCOVERED EVIDENCE

The defendant contends the trial court abused its discretion in failing to grant a new trial based on newly discovered exculpatory evidence. We disagree.

At trial, Mike and Sheila Garrett, the latter being defendant's sister, attempted to avoid testifying by invoking their right against self-incrimination. However, after speaking with their attorney, they agreed to testify. Subsequently, the state chose not to call them; however, by agreement of Mike and Sheila Garrett's attorney and defendant's counsel, the state introduced Sheila Garrett's 911 call and her video-taped statement to the authorities. Neither party called Mike Garrett as a witness.

After trial, defendant submitted an affidavit by Mike Garrett stating that on the morning of the murder he heard a gunshot, looked out the window, and saw Ricky Hooper climbing out of the driver's side of the victim's car-hauler. He stated that Hooper then got into a blue/silver truck.

In seeking a new trial based on newly discovered evidence, there must be a showing that defendant and her counsel exercised reasonable diligence in attempting to discover the evidence, and that neither the defendant nor her counsel had knowledge of the alleged newly discovered evidence prior to trial. State v. Nichols, 877 S.W.2d 722, 737 (Tenn. 1994); State v. Caldwell, 977 S.W.2d 110, 117 (Tenn. Crim. App. 1997). In addition, there must be a showing of the materiality of the testimony, and the trial court must determine whether the result of the trial would likely be changed if the evidence were produced. Nichols, 877 S.W.2d at 737; State v. Singleton, 853 S.W.2d 490, 496 (Tenn. 1993). The granting or refusal of a new trial on the basis of newly discovered evidence rests within the sound discretion of the trial court. State v. Walker, 910 S.W.2d 381, 395 (Tenn. 1995); Caldwell, 977 S.W.2d at 117.

First, we note that the record on appeal does not contain the contents of the hearing on the motion for new trial. Nevertheless, the transcript does indicate that no evidence was presented. We find no abuse of discretion in the denial of a new trial based solely upon this affidavit and the record before us.

The only indication relating to the timing of the discovery of this information is in Garrett's affidavit relating "[t]he only reason that I am coming forward now is because Tracie Kirland should not go to prison for a crime she did not commit." The affidavit further states he had hoped the defendant would "be found not guilty without me having to testify," and that he feared for his family's safety since Hooper had intimidated him. No details were related as to the alleged

-7-

intimidation. There is no affidavit from the defendant or defense counsel indicating they had no reason to anticipate this alleged evidence. Nor is there any indication what Garrett allegedly told the defendant and defense counsel prior to trial. Thus, the defendant has failed to show due diligence regarding this evidence.

We further note that even if Garrett observed Hooper exit the driver's side of the truck after the shot, that does not necessarily exonerate the defendant. The pathologist testified the shots were fired from the victim's right and the collar burn was caused by force exerted from the victim's left, thereby indicating the possible participation of two perpetrators. The alleged new evidence does not establish that the defendant was not present, aiding in the crime. Furthermore, the alleged new evidence is inconsistent with the defendant's statement that Hooper shot the victim at the truck stop. Thus, we are unable to conclude that the result of the trial would likely be different even with this evidence.

A motion for new trial based upon the alleged discovery of new evidence should be viewed with caution. *See* Evans v. State, 557 S.W.2d 927, 938 (Tenn. Crim. App. 1977) (citing Ross v. State, 130 Tenn. 387, 394, 170 S.W. 1026 (1914)). We consider this especially true when the alleged new evidence is from a person in the defendant's family who was available as a witness during trial.

Based upon these considerations, we are unable to find error in the denial of the motion for new trial.


### **CONCLUSION**

Upon a thorough review of the record, we conclude the evidence was insufficient to sustain a conviction for first degree premeditated murder. The conviction of the defendant is reduced to second degree murder. We find no error regarding the remaining issues. Thus, the judgment of the trial court is affirmed as modified, and the case is remanded to the trial court for re-sentencing for second degree murder.


_____
JOE G. RILEY, JUDGE