# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
September 28, 2004 Session

## STATE OF TENNESSEE v. JACK SHERRILL, ALIAS

### Direct Appeal from the Criminal Court for Knox County
### No. 68698     Mary Beth Leibowitz, Judge

---

### No. E2004-00175-CCA-R3-CD - March 8, 2005

---

The defendant was convicted of rape of a child, a Class A felony, and aggravated sexual battery, a Class B felony, and was sentenced to an effective sentence of thirty years. The defendant now appeals his conviction contending that: (1) the evidence was insufficient to support the conviction; (2) the trial court erred in failing to grant a new trial based on newly discovered evidence; and (3) the trial court erred in denying the defendant's motion for continuance. The defendant also seeks review of sentencing issues in light of <u>Blakely</u>. After review, we conclude there is no reversible error and affirm the judgments of the trial court as to convictions and sentencing.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and DAVID H. WELLES, JJ., joined.

A. Philip Lomonaco, Knoxville, Tennessee, for the appellee, State of Tennessee.

Paul G. Summers, Attorney General and Reporter; Kathy D. Aslinger, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Kevin Allen, Assistant District Attorney General, for the appellant, State of Tennessee.

## OPINION

The defendant, Jack Sherrill, was charged by presentment with two counts of rape of a child. A jury convicted the defendant of one count of rape of a child, a Class A felony, and one count of aggravated sexual battery, a Class B felony. The defendant was sentenced to twenty years and ten years respectively, to be served consecutively. The defendant originally appealed the conviction and later filed a motion to review the sentencing in light of <u>Blakely v. Washington</u>, 542 U.S. ____, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). The issues presented are:

    A)  The evidence was insufficient to support the defendant's convictions;

B) The trial court erred in refusing to grant a new trial based on newly discovered evidence;

C) The trial court erred in denying a motion for continuance to allow the defendant's counsel to comply with procedural notice requirements of Tennessee Rule of Evidence 412; and

D) Propriety of sentencing pursuant to Blakely.

The victim herein testified that she was born November 6, 1986. During the victim's fourth and fifth grade school years she was a close friend of Jackie Sherrill, the defendant's granddaughter. Jackie Sherrill resided with the defendant. The two girls often stayed at each other's houses. The defendant drove a truck professionally and, during his absences, Jackie would stay with the victim and her parents. The victim stated that in December of 1997, while the defendant was transporting her home from school, he put his hand in her pants and placed his finger in her vagina. She said this occurred every day for a week. The victim eventually informed her parents of the defendant's actions. Her mother responded that if it happened again, the victim should tell them so they could do something about it. The victim took this reaction as a sign of disbelief by her parents, and she informed her school principal. This resulted in the victim being interviewed by a Department of Human Services worker accompanied by a police officer. The victim was also examined by a physician, Dr. Charles Machen. No action was taken, and the victim continued to be in the company of the defendant at her parents' behest. She stated that the defendant often babysat her and that she accompanied the defendant on errands for her parents. On a night in April of 1999, the victim and her brothers were staying with Jackie Sherrill at the defendant's house. While the victim and the defendant were seated on the couch watching television, she said the defendant again put his hand in her pants and probed her vagina with his finger. She stated that it hurt her and that he ignored her request to stop. She claimed this lasted "about an hour" until Jackie came in the room and the defendant jerked his hand away. The victim said that she did not discuss this event with Jackie.

The record does not establish how the incident in April of 1999 was reported, but the victim was examined again by Dr. Machen. The victim was removed from her parents' home and placed in foster care for over a year. Jackie Sherrill shared the foster home with her during a portion of the time.

Dr. Charles Machen, a private pediatrician and a medical consultant for Child Advocacy Center of East Tennessee (Child Help), was qualified as an expert in pediatric medicine. He stated that he performed "head to toe" examinations of the children who were suspected of being sexually abused. This procedure includes a genital examination, if appropriate. Dr. Machen indicated that his practice was to first interview the child alone or with a parent present. His first examination of the victim was on December 16, 1997. His examination revealed that she was "about half way into her puberty." Her hymen was intact, completely normal, and consistent with her age development.

On April 13, 1999, Dr. Machen again interviewed and examined the victim. The victim related that the defendant had inserted his finger in her vagina while she was at the defendant's house on the preceding Saturday. He stated that the vaginal examination revealed that her maturation had

caused her hymen to be more elastic. He also observed notch formation of the hymen. He indicated that notching can be caused by penetration but also can occur due to natural development. Dr. Machen characterized the physical observations on both examinations as consistent with the history related by the victim. He affirmed that the hymen could remain intact even after penetration.

On cross-examination, Dr. Machen admitted that he had not observed any damage to the victim's vaginal hymen on either exam and that his findings were consistent with a normally developing adolescent female.

Ron Neal, in February of 1998, was a Knoxville Police Investigator assigned to the Juvenile Division. As such, he worked in tandem with a Department of Children's Services worker to investigate allegations of sexual abuse of children. Due to the allegations made by the victim, Mr. Neal interviewed the defendant on February 7, 1998. Mr. Neal stated that the defendant was cooperative in the interview. The defendant admitted that he had access to the victim by transporting her from school apart from other children and taking her on shopping trips. The defendant denied any improper touching by him. The defendant could not explain why the victim had made the charges other than possibly her anger at his refusal to buy a doll buggy she had wanted.

Jim Adrian, a case manager for the Department of Children's Services, was called as a defense witness. He stated that one of his duties was to investigate abuse and neglect cases. In March of 1999, he was referred an allegation by Jackie Sherrill, the defendant's granddaughter, of being raped by a friend of her sister. After Mr. Adrian interviewed Ms. Sherrill in April of 1999, she recanted her charges and said that she fabricated the story because she wanted to go and live with her mother. During the course of this investigation, the defendant appeared at the Child Help office with the victim in this case. Mr. Adrian instructed the defendant that he was not to be around the victim due to her previous allegations. A few days later, Mr. Adrian learned of the new allegations by the victim. He then interviewed the victim and Jackie Sherrill. Mr. Adrian said that Jackie's statement was consistent with the facts related by the victim concerning the incident. He stated further that the victim was removed from her parents' home due to their failure to protect her. Jackie Sherrill was removed from the defendant's care due to inappropriate supervision when the defendant was out of town on his job.

Ron Lake testified as a character witness for the defense. Mr. Lake was a truck driver who had formerly worked as a police officer and an agent for the Department of Energy. Mr. Lake said he had observed the defendant in interactions among children and the defendant's actions were always appropriate. Heather Cox, the defendant's thirteen-year-old granddaughter, testified that she and a girlfriend had accompanied the defendant on a four day trip in his truck.

After the conclusion of proof and outside the jury's presence, the defendant proffered a summation of testimony that Tracy Hutton would have given had it been admitted. In 1997-98, Ms. Hutton had lived with the victim's mother. She had observed the victim grab three men in the crotch area. In addition, she had seen the victim self-stimulate herself in church in open view to others.

**Sufficiency**

The defendant maintains that the evidence is insufficient to support the convictions. The defendant points to inconsistencies in the victim's testimony and places a strong emphasis on the lack of corroborating evidence. The State contends that the evidence was sufficient to support the convictions. Our review of the evidence and the applicable law compel us to agree with the State.

When evaluating the sufficiency of the evidence, we must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). In light of the convictions, this Court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003). The trier of fact, not this Court, resolves questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence. Id. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Count one of the presentment charged the defendant with rape of a child by placing his finger in the victim's vagina in April of 1999 when the victim was under thirteen years of age. Rape of a child is "the unlawful sexual penetration of a victim by the defendant . . ., if such victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-522(a). "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required . . . ." Tenn. Code Ann. § 39-13-501(7).

The victim testified that in April of 1999, she was sleeping over at the defendant's house with her friend, Jackie Sherrill, the defendant's granddaughter. She stated that while she was sitting on the couch with the defendant, the defendant placed his hand in her pants and inserted a finger in her vagina. The victim was then twelve years old.

Count two of the presentment charged the defendant with rape of a child between December __ of 1997 and "on divers and diverse dates between that day and the __ day of April, 1999." This act of rape was specifically charged as being accomplished by the defendant placing his finger in the vagina of the victim who was less than thirteen years of age. The jury convicted the defendant on the lesser included charge of aggravated sexual battery. Aggravated sexual battery is "unlawful sexual contact with a victim by the defendant or the defendant by a victim" where, among other things, "[t]he victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-504(a)(4). "'Sexual contact' includes the intentional touching of the victim's, the defendant's or any other person's intimate parts . . . if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." Tenn. Code Ann. § 39-13-501(6).

The victim testified that during a week in April of 1997, the defendant inserted his finger in her vagina while he was transporting her from her school. On direct testimony, she said it occurred every day that week. On cross-examination, she said it happened on three different days.

Dr. Machen's testimony neither confirmed that the victim had experienced vaginal penetration nor ruled out the possibility. He stated that his medical findings were consistent with both the victim's version of events and with normal development during maturation.

The defendant argues that the lack of corroboration together with alleged inconsistencies render the evidence insufficient to convict the defendant. However, the general rule of law is that a defendant may be convicted upon the uncorroborated testimony of one witness. Letner v. State, 512 S.W.2d 643, 649 (Tenn. Crim. App. 1974); State v. McKnight, 900 S.W.2d 36, 48 (Tenn. Crim. App. 1994); State v. Wyrick, 62 S.W.3d 751, 767 (Tenn. Crim. App. 2001).

There were apparent inconsistences in the victim's testimony such as the frequency of abuse in December of 1997 and the whereabouts of her siblings during the incident at the defendant's home in April of 1999. These inconsistencies are not such as to vitiate the victim's allegations but would go to the weight to be given her testimony. Those issues have been resolved by the jury, which is solely their province and not ours. See Elkins, 102 S.W.3d at 581. The evidence in this cause, albeit uncorroborated by the medical proof, is sufficient to support the defendant's convictions.

**Newly Discovered Evidence**

The defendant contends that the trial court erred in refusing to grant a new trial based on newly discovered evidence. The proposed evidence is a statement given by Jackie Sherrill, the defendant's granddaughter, concerning the events at the defendant's home in April of 1999. The statement is an interview by the defendant's counsel and submitted with the motion for new trial under the defendant counsel's affidavit. Ms. Sherrill said that in April of 1999, she told her mother that she thought she saw the defendant's hand in the victim's pants. Ms. Sherrill's mother, when informed of this, told Jackie to report what she thought she had seen. Jackie Sherrill then reported it to the victim's mother, and an investigation ensued. Ms. Sherrill said she went to Child Help with the victim and her mother but denied she ever spoke with James Adrian about this incident. Ms. Sherrill's recollection of the incident at the time of the statement in support of the new trial was that she did not actually see the defendant's hands in the victim's pants. In this latter statement, Ms. Sherrill was not certain what she had witnessed between the defendant and the victim.

Defense counsel interviewed Ms. Sherrill before the trial court, and she stated that she could not remember what happened on the night in question. Consequently, defense counsel informed Ms. Sherrill and the defendant that Ms. Sherrill would not be needed at trial.

Ms. Sherrill was not a witness at trial. Defendant's counsel had elicited testimony from James Adrian, a Department of Children's Services investigator, that Ms. Sherrill had made a false report concerning a sexual assault on herself. On cross-examination Mr. Adrian said that Jackie

Sherrill's statement concerning the April incident at the defendant's house was consistent with the victim's version of events. The details of what Ms. Sherrill allegedly observed were not divulged at trial. Ms. Sherrill also stated in her most recent statement that the victim denied the event happened and did not report it to her mother. In seeking a new trial based on newly discovered evidence, there must be a showing that defendant and his counsel exercised reasonable diligence in attempting to discover the evidence and that neither the defendant nor his counsel had knowledge of the alleged newly discovered evidence prior to trial. State v. Nichols, 877 S.W.2d 722, 737 (Tenn. 1994); State v. Caldwell, 977 S.W.2d 110, 117 (Tenn. Crim. App. 1997). In addition, there must be a showing of the materiality of the testimony, and the trial court must determine whether the result of the trial would likely be changed if the evidence were produced. Nichols, 877 S.W.2d at 737; State v. Singleton, 853 S.W.2d 490, 496 (Tenn. 1993). The granting or refusal of a new trial on the basis of newly discovered evidence rests within the sound discretion of the trial court. State v. Walker, 910 S.W.2d 381, 395 (Tenn. 1995); Caldwell, 977 S.W.2d at 117.

We are not convinced that Jackie Sherrill's most recent statement qualifies as "newly discovered evidence." Her version of what she witnessed has not materially changed. As in her first interview with defense counsel, she remains uncertain as to what transpired. Her recent statement does contradict the victim's claim that she reported the incident to her mother and also James Adrian's statement that Ms. Sherrill's version was consistent with the victim's statement. It does not, however, amount to a refutation of her prior testimony or a rebuttal of the victim's testimony.

The most material evidence at trial was the testimony of the victim. The information contained in Ms. Sherrill's most recent statement contains nothing that would rebut the victim's testimony or likely change the trial result. The trial court did not abuse its discretion in overruling the motion for new trial on the basis of newly discovered evidence.

### Continuance

The defendant lastly maintains that the trial court erred in failing to grant a continuance in order to permit the defendant to comply with the procedural notice requirements of Tennessee Rule of Evidence 412(d).

On the day of trial, the defendant's counsel, after the State's motion in limine, learned of the requirement of notice in Tennessee Rule of Evidence 412(d). Defense counsel then moved for a continuance to enable him to comply.[1]

The decision to grant or deny a motion for continuance is within the discretion of the trial court, the denial of which will not be overturned on appeal absent a clear showing the trial court abused its discretion to the defendant's prejudice. State v. Russell, 10 S.W.3d 270, 275 (Tenn. Crim. App. 1999). An abuse is demonstrated by showing the failure to grant a continuance denied the

---

[1] This continuance was requested after six trial settings and over four years from the date of presentment.

-6-

defendant a fair trial or it could be reasonably concluded that there would have been a different result had the continuance been granted. State v. Hines, 919 S.W.2d 573, 579 (Tenn. 1995).

The defendant proffered evidence that would have been presented by Tracy Hutton who had lived with the victim's mother. Ms. Hutton would have testified that during 1997 - 1998, she had witnessed the victim grab the crotches of three different men. Ms. Hutton also witnessed the victim engaging in self-stimulation in church in a notorious fashion.

Tennessee Rule of Evidence 412(c)(4) provides that proof of sexual behavior with persons other than the accused is limited to the following:
(i) to rebut or explain scientific or medical evidence, or
(ii) to prove or explain the source of semen, injury, disease, or knowledge of sexual matters, or
(iii) to prove consent if the evidence is of a pattern of sexual behavior so distinctive and so closely resembling the accused's version of the alleged encounter with the victim that it tends to prove that the victim consented to the act charged or behaved in such a manner as to lead the defendant reasonably to believe that the victim consented.

The defendant asserts that the proffered testimony would have rebutted Dr. Machen's testimony and shown the victim's knowledge of sexual matters. In fact, the testimony would have done neither and would have been inadmissible. Dr. Machen's testimony was not corroborative of the victim's. Dr. Machen stated that his physical findings were consistent with both the victim's version of digital penetration and normal maturation. There being no medical proof of sexual penetration, the proffered evidence would not serve as rebuttal. Nor does conduct consisting of touching or fondling one's self prove knowledge of sexual matters or that it constituted sexual activity. The defendant has failed to show that prejudice resulted from the refusal to grant a continuance. The trial court did not abuse its discretion in denying the requested continuance.

**Sentence**

The defendant filed a post-argument motion for sentence review in light of Blakely v. Washington, 542 U.S. ____, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). This motion was granted, and the State has filed its brief in response.

The defendant was sentenced to twenty years for the conviction of rape of a child, a Class A felony, and ten years for aggravated sexual battery, a Class B felony. The sentences were ordered to run consecutively for an effective sentence of thirty years. The trial court applied two enhancement factors; that the defendant abused a position of private trust and that the crimes were committed to gratify the defendant's desire for pleasure and excitement. See Tenn. Code Ann. § 40-35-114(8), (16). The trial court placed greater weight on the former enhancement factor, abuse of a private trust. During the sentencing phase, the defendant's counsel conceded that this enhancement factor was appropriate. No mitigating factors were applied.

Initially, the State contends that the defendant's failure to raise this issue in either the trial court or on original appeal constitutes a waiver. This Court has rejected this argument in previous cases, and we maintain that position. See State v. Chester Wayne Walters, No. M2003-03019-CCA-R3-CD, 2004 Tenn. Crim. App. LEXIS 1053, at *55-56 (Tenn. Crim. App. at Nashville, Nov. 30, 2004); State v. Earice Roberts, No. W2003-02668-CCA-R3-CD, 2004 Tenn. Crim. App. LEXIS 2059, at *29-30 (Tenn. Crim. App. at Jackson, Nov. 23, 2004).

In Blakely, the Supreme Court, applying the rule in Apprendi v. New Jersey, 530 U.S. 466, 490, 170 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), observed that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 124 S. Ct. at 2537.

In the instant case, the trial judge sentenced the defendant on the rape of a child to the presumptive sentence of twenty years. Therefore, this sentence would not be implicated by the Blakely holding. The sentence for aggravated sexual battery was enhanced from the presumptive eight years to ten years due to the finding of the two enhancement factors; abuse of private trust and commission of a crime to satisfy pleasure and desire. At the sentencing hearing, the defendant's counsel admitted the applicability of the factor of abuse of private trust in the following language:

> The point I want to make is, Your Honor, that the State really has not set forth any other evidence -- proffered any other evidence in addition to the victim's age to show that she was extremely vulnerable other than this trust issue, which is really incorporated into the enhancement factor that we would agree to, that there was a position of trust that had developed between these two individuals. I think there's evidence to support that and it's hard to argue against that.

The enhancement factor, having been admitted, was appropriately applied. See Apprendi, 566 U.S. at 490; State v. Steven M. Stinson, No. E2003-01720-CCA-R3-CD, 2004 Tenn. Crim. App. LEXIS 683 at *22 (Tenn. Crim. App. at Knoxville, July 29, 2004).

The remaining enhancement factor was that the crimes against the victim were committed to satisfy the desire for pleasure and excitement. This factor is an essential element of the offenses of sexual battery and aggravated sexual battery and cannot be used to enhance the conviction. State v. Kissinger, 922 S.W.2d 482, 489-90 (Tenn. 1996).

Thus, one enhancement factor remains applicable, the abuse of a private trust. The trial judge gave greater weight to this factor and, in our view, was justified in enhancing the sentence for aggravated sexual battery by two years.

The defendant also seeks a review in light of Blakely as to imposition of consecutive sentences. This Court has consistently concluded that neither Blakely nor Apprendi impact a trial court's imposition of consecutive sentences. See Earice Roberts, 2004 Tenn. Crim. App. LEXIS at *35-36; State v. Michael L. Wallace, No. E2003-01719-CCA-R3-CD, 2004 Tenn. Crim. App. LEXIS 1031, at *21 (Tenn. Crim. App., at Knoxville, Nov. 23, 2004); State v. Lawrence Warren Pierce, No. M2003-01924-CCA-R3-CD, 2004 Tenn. Crim. App. LEXIS 994, at *37 (Tenn. Crim.

App., at Nashville, Nov. 9, 2004). Our supreme court observed in <u>State v. Robinson</u>, 146 S.W.3d 469, 499 n. 14 (Tenn. 2004), that "several courts" have held that <u>Blakely</u> and <u>Apprendi</u> do not apply to the decision to impose consecutive sentences.

The defendant does not challenge the propriety of consecutive sentences on other grounds, and we affirm our conclusion that neither <u>Blakely</u> or <u>Apprendi</u> impact the decision regarding consecutive sentences.

We affirm the defendant's convictions and the sentence as imposed by the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE